J.S.A., Plaintiff-Appellee, v. M.H. *et al.*, Defendants-Appellants.

Third District   No. 3—04—0678

Opinion filed October 28, 2005.

Edward R. Jaquays, of Law Offices of Edward R. Jaquays, of Joliet, for appellants.

J. Scott Arthur, of Orland Park, for appellee.

Denise Grabavoy, of Bolingbrook, guardian *ad litem*.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendants M.H. and W.C.H. brought this interlocutory appeal. We find that we lack jurisdiction to consider the appeal based on the failure of plaintiff J.S.A. to register with the Putative Father Registry. See 750 ILCS 50/12.1 (West 1998). Accordingly, we dismiss the matter. Furthermore, we vacate as void all previous orders entered by the trial court in the parentage action, including the prior opinion issued by this court, due to lack of jurisdiction.

## FACTS

This consolidated action involves both an adoption proceeding and a parentage action. The background facts of the controversy are set forth in detail in this court's prior opinion in *J.S.A. v. M.H.*, 343 Ill. App. 3d 217, 797 N.E.2d 705 (2003). We will thus spell out only the facts pertinent to an understanding of the case and those facts necessary for our discussion.

J.S.A. and M.H. were involved in an extramarital affair that began in 1993. Both J.S.A. and M.H. were married and neither told his or her spouse of the affair. In January of 1996, M.H. gave birth to a son,

W.T.H. The child's birth certificate listed W.C.H. as his father; however, the record reveals that J.S.A. considered himself the child's biological father but agreed to take a sideline role in the child's life. The affair ended in 1998, and in January 1999, at J.S.A.'s behest, a deoxyribonucleic acid (DNA) test was performed which allegedly proved that J.S.A. was the child's father. Thereafter, J.S.A. filed a petition to determine the existence of a parent-child relationship under the Illinois Parentage Act of 1984 (Act) (750 ILCS 45/7(a) (West 1998)).

In 2000, before the case was appealed, M.H. and W.C.H. filed motions to dismiss the parentage action and to dismiss J.S.A. as a party to the adoption case pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1998)). They sought dismissal based on J.S.A.'s failure to register with the Putative Father Registry (750 ILCS 50/12.1 (West 1998)). The trial court granted the motion as to the adoption action but denied it in the parentage proceeding. Thereafter, J.S.A. filed a motion to reconsider and a motion to vacate the trial court's orders. The trial court took the motions under advisement but never ruled on them. The trial court stayed the adoption proceeding and, following a best interest hearing in the parentage action, found that it would be contrary to the child's best interests for the parentage action to proceed, dismissed J.S.A.'s petition, and denied his motion for DNA testing. On appeal, this court determined that the trial court erred when it held the best interest hearing and remanded the cause. The mandate from the parties' first appeal issued in February 2004. Thereafter, the adoption case was assigned to the original trial court judge so that he could rule on the pending motion to reconsider the order dismissing J.S.A. from the case. However, it appears from the record that no such ruling issued.

The parentage action remained with the presiding judge. At that time, the trial court in the parentage action ordered J.S.A., M.H. and the child to submit to deoxyribonucleic acid (DNA) testing. The following month, M.H. and W.C.H. filed, among other motions, a verified petition for injunctive relief in the parentage action. In the petition, they sought an order enjoining the DNA tests pending the conclusion of the adoption proceedings. The trial court stayed the order for DNA testing until the motions were decided. In the adoption action, M.H. and W.C.H. filed the same petition for injunctive relief. Both the parentage action and the adoption proceedings were thereafter reassigned to one judge who entered an order consolidating the cases for all purposes other than trial pursuant to a motion by the child's guardian *ad litem* (GAL).

A hearing ensued on both of the petitions for injunctive relief. The trial court denied both motions and ordered that the previously

entered stay in the adoption case remain in effect pending the results of the DNA tests. J.S.A. filed a motion requesting W.C.H. submit to DNA testing pursuant to Supreme Court Rule 215. 210 Ill. 2d R. 215. M.H. and W.C.H. filed a motion to dismiss J.S.A.'s motion for Rule 215 discovery, which the trial court denied. The court set a deadline by which DNA testing was to be completed by the parties. Thereafter, M.H. and W.C.H. filed motions to reconsider the denials of their motions for injunctive relief and to dismiss the motion for Rule 215 discovery. They also filed a motion to sever the cases and lift the stay in the adoption proceeding. The trial court denied all three motions and M.H. and W.C.H. filed this interlocutory appeal.

While this court was considering the appeal, the trial court conducted a paternity hearing and ruled, based on W.C.H.'s refusal to submit to DNA testing, that J.S.A. was the minor's biological father. In anticipation of a best interest hearing, the parties stipulated that the record from the first best interest hearing be considered. On May 24, 2005, the date scheduled for closing arguments on the best interest determination, M.H. and W.C.H. sought a ruling on the motions for reconsideration and to vacate that had been pending from the initial proceedings. The same day, this court requested that the parties submit supplemental briefs addressing the consequences, if any, of J.S.A.'s failure to register with the Putative Father Registry (Registry) as set forth in section 12.1 of the Adoption Act (750 ILCS 50/12.1 (West 1998)) as discussed in *In re Petition to Adopt O.J.M.*, 293 Ill. App. 3d 49, 687 N.E.2d 113 (1997).

## ANALYSIS

In their supplemental briefs, M.H. and W.C.H., joined by the attorney and GAL for the minor child, argued that J.S.A. is properly dismissed as a party to the adoption action and is barred from maintaining his parentage action due to his failure to register with the Putative Father Registry. In response, J.S.A. asserted that the Registry was not applicable to his parentage petition.

■ Pursuant to section 12.1(b) of the Adoption Act (750 ILCS 50/12.1(b) (West 1998)), a putative father is required to register no later than 30 days after the birth of the child. Section 12.1(g) further provides:

"(g) Except as provided in subsections (b) or (c) of Section 8 of this Act, a putative father who fails to register with the Putative Father Registry as provided in this Section is barred from thereafter bringing or maintaining any action to assert any interest in the child, unless he proves by clear and convincing evidence that:

(1) it was not possible for him to register within the period of time specified in subsection (b) of this Section; and

(2) his failure to register was through no fault of his own; and

(3) he registered within 10 days after it became possible for him to file." 750 ILCS 50/12(g) (West 1998).

In *In re Petition to Adopt O.J.M.*, 293 Ill. App. 3d 49, 687 N.E.2d 113, the reviewing court considered whether the trial court erred when it dismissed the putative father's parentage petition due to his failure to comply with the provisions set forth in section 12.1 of the Adoption Act (750 ILCS 50/12.1 (West 1994)). In holding that the parentage petition was properly dismissed, the court stated that the putative father was barred from bringing or maintaining his parentage petition due to his failure to timely register. *In re Petition to Adopt O.J.M.*, 293 Ill. App. 3d at 58, 687 N.E.2d at 120.

■ In the instant case, it is undisputed that J.S.A. never registered with the Putative Father Registry. He has not offered any evidence or argued that any of the three reasons set forth in section 12.1(g) of the Adoption Act (750 ILCS 50/12.1(g) (West 1998)) excepting a putative father from timely registering apply to him. The plain language of the statute prohibits J.S.A. from intervening in the adoption action and from initiating the parentage action. Contrary to J.S.A.'s argument that the Parentage Act provides a 20-year statute of limitations within which he may petition to establish a parent-child relationship, the language in section 12.1 unequivocally states that failure to register bars a putative father from "thereafter bringing or maintaining *any action* to assert any interest in the child." (Emphasis added.) 750 ILCS 50/12.1(g) (West 1998). We thus find that the statutes should be read in tandem and that they require that a putative father first satisfy the Registry requirement in order to initiate a parentage petition. See 750 ILCS 45/8(a)(1) (West 1998); 750 ILCS 50/12.1 (West 1998). Because J.S.A.'s failure to satisfy the Registry requirement barred him from pursuing a parentage petition, all orders entered in the parentage proceeding are void *ab initio*, including the order declaring J.S.A. the child's biological father and this court's opinion previously issued in the parentage action. *In re Marriage of Schlam*, 271 Ill. App. 3d 788, 793, 648 N.E.2d 345, 348 (1995).

Based on the above reasoning, we must therefore dismiss this appeal for lack of jurisdiction. See *In re Marriage of Ramsey*, 339 Ill. App. 3d 752, 755, 792 N.E.2d 337, 340 (2003).

Dismissed.

SLATER, P.J., and SCHMIDT, J., concur.