No. 3–04–0678

Filed-**Modified** September 8, 2008
IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

J.S.A.,                                    )        Appeal from the Circuit Court
    Plaintiff-Appellee,                 )        for the 12th Judicial Circuit,
                                        )        Will County, Illinois
                                        )
    v.                                  )        Nos.    99–F-420
                                        )                99–AD–115
                                        )
M.H. and W.C.H.,                           )        Honorable
    Defendants-Appellants.              )        William McMenamin,
                                        )        Judge, Presiding

Consolidated with
3–04–0908

J.S.A.,                                    )        Appeal from the Circuit Court
    Plaintiff-Appellee,                 )        for the 12th Judicial Circuit,
                                        )        Will County, Illinois
                                        )
    v.                                  )        Nos.    99–F-420
                                        )                99–AD–115
                                        )
M.H. and W.C.H.,                           )        Honorable
    Defendants-Appellants.              )        William McMenamin,
                                        )        Judge, Presiding

Consolidated with
3–05–0556

J.S.A.,                                    )        Appeal from the Circuit Court
    Plaintiff-Appellant,                )        for the 12th Judicial Circuit,
                                        )        Will County, Illinois
                                        )
    v.                                  )        Nos.    99–F-420
                                        )
M.H. and W.C.H.,                           )        Honorable
    Defendants-Appellees.               )        William McMenamin,
                                        )        Judge, Presiding

| | | |
|---|---|---|
| M.H. and W.C.H. | ) | Appeal from the Circuit Court |
|     Plaintiffs-Appellees and | ) | for the 12th Judicial Circuit, |
|     Cross-Appellants, | ) | Will County, Illinois |
| | ) | |
|     v. | ) | Nos.   99–AD-115 |
| | ) | |
| | ) | |
| J.S.A., | ) | Honorable |
|     Defendant-Appellant and | ) | William McMenamin, |
|     Cross-Appellee. | ) | Judge, Presiding |

Modified Upon Denial of Rehearing
JUSTICE O'BRIEN delivered the opinion of the court:

This consolidated action involves both an adoption proceeding (No. 99 AD 115) and a parentage action (No. 99 F 420). Our review extends to issues raised in four appeals, including No. 3-04-0678, which is before us on remand from the supreme court's decision, J.S.A. v. M.H., 224 Ill. 2d 182, 863 N.E.2d 236 (2007). The other appeals, Nos. 3-04-0908, 3-05-0556, and 3-05-0561, were originally dismissed by this court based on our conclusion in No. 3-04-0678. We now reverse the trial court's denial of J.S.A.'s petition to establish a parent-child relationship and remand for a hearing on his visitation request; reinstate J.S.A. as a party to the adoption action; vacate the trial court's grant of partial summary judgment in favor of M.H. and W.H. and stay that proceeding pending the conclusion of the parentage action; and affirm the finding of contempt against W.H. and the trial court's denial of the Hs.' motion to lift the stay and sever the cases and its order compelling W.H. to submit to DNA testing. The other issues raised in these appeals we determine to be moot.

FACTS

2

The facts of this protracted and torturous litigation have been set forth in our previous decisions, as well as the supreme court's opinion. We will briefly summarize and add facts from the events which have occurred subsequent to the prior decisions. In 1993, attorneys J.S.A. and M.H. began an extramarital affair, and in January 1996, a child, T.H., was born to M.H. Her husband, W.H., was listed on the child's birth certificate as the father and M.H. and W.H. began to raise the child as their own. In 1998, M.H. ended her affair with J.S.A., and in 1999, J.S.A. insisted that the parties perform a self-deoxyribonucleic acid (DNA) test. In September 1999, J.S.A. filed a petition to determine the existence of a parent-child relationship pursuant to the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/7(a) (West 1998)). The following month, W.H. filed a declaration of parentage and was joined as a party in the parentage action.

In October 1999, M.H. and W.H. filed a petition to adopt a related child, naming J.S.A. and T.H. as respondents. They also filed in the adoption action a petition to terminate J.S.A.'s parental rights, claiming that he was unfit. In February 2000, M.H. and W.H. filed a motion to dismiss J.S.A. from both actions per section 2-619(a)(9) of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619(a)(9) (West 1998)) for his failure to register with the Putative Father Registry in the Adoption Act (750 ILCS 50/12.1 (West 1998)). The trial court granted the motion to dismiss in the adoption action but denied it in the parentage proceeding. J.S.A. filed a motion to reconsider his dismissal from the adoption proceedings which remained pending until June 2005.

In December 2001, following a hearing in the parentage action, the trial court dismissed J.S.A.'s petition to establish a parent-child relationship, finding that T.H.'s best interest were served by denying J.S.A.'s request for DNA testing. J.S.A. appealed and we reversed and remanded in August 2003. J.S.A. v. M.H., 343 Ill. App. 3d 217, 797 N.E.2d 705 (2003). On remand and

3

pursuant to our directive, the parties were ordered to submit to DNA testing. M.H. and W.H. sought injunctive relief, requesting that the DNA tests be enjoined until the adoption action concluded, and filed a motion to declare the Parentage Act unconstitutional. Their motions were denied and the adoption action was ordered to remain stayed pursuant to a prior order pending the DNA test results. J.S.A. moved to have W.H. submit to DNA testing pursuant to Supreme Court Rule 215. 210 Ill. 2d R. 215. Motions by M.H. and W.H. to dismiss J.S.A.'s Rule 215 request and to sever the cases and lift the stay were denied. After their motions to reconsider were denied, M.H. and W.H. filed appeal No. 3-04-0678.

Pursuant to the court's order, J.S.A. submitted to DNA testing on September 9, 2004. M.H., W.H. and T.H. did not comply with the order. A rule to show cause issued for their failure to comply, and in November 2004, the trial court held M.H. and W.H. in contempt. The trial court fined W.H. $100 for his discovery violation and entered a finding that W.H.'s failure to submit to DNA testing constituted an evidentiary admission that testing would exclude him as T.H.'s father pursuant to section 11(a) of the Parentage Act. 750 ILCS 45/11(a) (West 2004). M.H. was sentenced to imprisonment with the sentence stayed for two weeks. On December 23, 2004, M.H. and T.H. submitted to DNA testing. M.H. and W.H. thereafter appealed the trial court's order requiring them to submit to DNA testing, the denial of their motion to declare the Parentage Act unconstitutional, and the findings of contempt against them in No. 3-04-0908.

In March 2005, following an evidentiary hearing, the trial court found the Parentage Act constitutional on its face and as applied. In April 2005, an order of parentage was entered finding J.S.A. to be T.H.'s natural father and W.H. not the natural father of T.H. The following month, the trial court held a hearing on J.S.A.'s petition to establish a parent-child relationship. The parties

4

stipulated that the trial court would use the testimony from the original best interest hearing held in 2000 and 2001. In June 2005, the trial court entered an order finding that it was not in T.H.'s best interest to establish a parent-child relationship with J.S.A. or for J.S.A. to have custodial or visitation privileges with T.H., and denying J.S.A.'s petition to establish a parent-child relationship. The trial court further found that section 2-619 of the Civil Code was not a proper basis for J.S.A.'s dismissal from the adoption action and granted J.S.A.'s motion to reconsider, holding that J.S.A. was entitled to establish that the exceptions for failure to register with the Putative Father Registry applied. 735 ILCS 5/2-619 (West 1998); 750 ILCS 50/12.1(h) (West 2004). M.H. and W.H. responded with a motion for partial summary judgment in the adoption action. J.S.A. answered, asserting affirmative defenses regarding his failure to register.

In the parentage proceeding, J.S.A.'s motion for a new trial and his oral motion to stay the adoption pending his appeal of the dismissal of his parentage petition and visitation request were denied. He appealed in No. 3-05-0556. In August 2005, the trial court granted in part and denied in part M.H. and W.H.'s motion for partial summary judgment, holding that J.S.A.'s failure to register with the Putative Father Registry constituted abandonment and *prima facie* evidence of unfitness sufficient to terminate his parentage rights. J.S.A. appealed that decision and M.H. and W.H. cross-appealed in No. 3-05-0561.

In October 2005, we decided appeal No. 3-04-0678, and issued J.S.A. v. M.H., 361 Ill. App. 3d 745, 841 N.E.2d 983 (2005), in which we dismissed the appeal for lack of jurisdiction. Based on our decision in No. 3-04-0678, in November 2005, we dismissed appeals No. 3-05-0556 and No. 3-05-0561 as moot and vacated as void the contempt order in No. 3-04-0908. In February 2007, the Illinois Supreme Court reversed and remanded our dismissal of No. 3-04-0678. J.S.A. v. M.H., 224

5

Ill. 2d 182, 863 N.E.2d 236 (2007). In July 2007, this court issued orders vacating the dismissal of all the appeals which we now consider on the merits.

**ANALYSIS**

No. 3-04-0678

We begin with the cause before us on remand from the Illinois Supreme Court. In this appeal, M.H. and W.H. raised three issues: whether the trial court erred in denying their motion to sever and to lift the stay in the adoption proceeding; whether the trial court erred in refusing the enjoin the DNA testing; and whether the trial court erred in compelling W.H. to undergo DNA testing pursuant to Supreme Court Rule 215. On our request, the parties briefed a fourth issue, whether J.S.A. should be barred from maintaining his parentage action and dismissed from the adoption proceeding for failing to register with the Putative Father Registry.

Because our determination of the last issue resulted in reversal and remand of this court's prior decision in this appeal, we address it first. On appeal from our decision, the supreme court held that under the specific facts of this case, J.S.A. was not required to satisfy the registry requirements before initiating his parentage action. J.S.A., 224 Ill. 2d at 209, 863 N.E.2d at 252. The court so reasoned because T.H. was not the subject of a pending adoption action or expected to be one when J.S.A. filed his paternity action. J.S.A., 224 Ill. 2d at 209, 863 N.E.2d at 252. The court based its conclusion on its finding that pursuant to rules of statutory interpretation, the Parentage Act and the Adoption Act are separate statutes which should not be read in tandem regarding the registry requirements. J.S.A., 224 Ill. 2d at 205, 863 N.E.2d at 249-50. The supreme court further determined that the circumstances of this case necessitated a finding that the registry requirements should not be a bar to J.S.A.'s participation in the adoption proceedings. J.S.A., 224 Ill. 2d at 206,

6

863 N.E.2d at 250. The court stated that the facts triggering application of the registry are not present in this case and the registry's purpose is not furthered by requiring J.S.A. to comply with its requirements. J.S.A., 224 Ill. 2d at 206, 863 N.E.2d at 250.

In accordance with the dictate set forth by the supreme court, we revisit what effect, if any, J.S.A.'s failure to register with the Putative Father Registry has on these proceedings. M.H. and W.H. made J.S.A. a party to the adoption action and then sought to dismiss him pursuant to a section 2-619 motion. The motion was granted in June 2000 based on J.S.A.'s failure to register with the Putative Father Registry. J.S.A. filed a motion to reconsider his dismissal. Although the motion was taken under advisement, there was no ruling on it until June 2005. At that time, the trial court found that a section 2-619 motion was not the proper vehicle for dismissal, granted J.S.A.'s motion to reconsider, and entered an order stating that J.S.A. was entitled to establish whether any exceptions to his failure to register applied. We agree with the trial court that J.S.A. should not have been dismissed from the adoption action based on his failure to register and affirm that decision. However, in compliance with the directive of the supreme court, we reverse that portion of the trial court's order allowing J.S.A. to assert whether his failure to register falls under any statutory exceptions to the registry requirements. We thus hold that J.S.A.'s failure to register with the Putative Father Registry is not relevant as to the parentage action and, under the facts of this case, does not affect his participation in the adoption proceedings. We accordingly reinstate J.S.A. as a party to the adoption proceedings.

The second issue we consider is whether the trial court abused its discretion when it denied the Hs.' motion to sever and to lift the stay in the adoption proceedings. They claim that the consolidation of the parentage and adoption cases substantially prejudiced their right to proceed with

7

the adoption and that the stay was not authorized by either statute or case law.

Section 2-1006 of the Civil Code provides that an action may be severed or actions in the same court consolidated "as an aid to convenience, whenever it can be done without prejudice to a substantial right." 735 ILCS 5/2-1006 (West 2002). The purpose of consolidating cases is to expedite the resolution of lawsuits, conserve the court's time, avoid duplicating efforts, and save unnecessary expenses. Peck v. Peck, 16 Ill. 2d 268, 276, 157 N.E.2d 249, 255 (1959). Consolidation is proper where the cases are of the same nature, arise from the same acts, involve the same issue and depend on the same evidence. La Salle National Bank v. Helry Corp., 136 Ill. App. 3d 897, 905, 483 N.E.2d 958, 963-64 (1985).

A trial court's authority to stay proceedings arises from its power to control the disposition of its cases. Vasa North Atlantic Insurance Co. v. Selcke, 261 Ill. App. 3d 626, 628, 633 N.E.2d 865, 868 (1994). A court considers a number of factors when deciding whether to issue a stay, including the orderly administration of justice, judicial economy, " 'comity; prevention of multiplicity; vexation and harassment; likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum.' " Vasa North Atlantic Insurance Co., 261 Ill. App. 3d at 628-29, 633 N.E.2d at 868, quoting Jam Productions, Ltd. v. Dominick's Finer Foods, Inc., 120 Ill. App. 3d 8, 11, 458 N.E.2d 100, 102 (1983). Where several actions are pending which involve substantially the same subject matter, a court may stay the proceedings in one matter and see whether the disposition of one action may settle the other. Shannon v. Stookey, 59 Ill. App. 3d 573, 577, 375 N.E.2d 881, 884 (1978). We review a trial court's denial of a motion to sever and its denial of a motion to lift a stay for an abuse of discretion. Ad-Ex, Inc. v. City of Chicago, 247 Ill. App. 3d 97, 102, 617 N.E.2d 333, 336-37 (1993); Zurich Insurance Co. v. Raymark Industries,

8

Inc., 213 Ill. App. 3d 591, 594, 572 N.E.2d 1119, 1122 (1991).

We acknowledge that at this point in the litigation, the stay has been lifted in the adoption proceeding based on the termination of the parentage action pursuant to the trial court's denial of J.S.A.'s petition to establish a parent-child relationship. However, as discussed below, that determination was in contravention of the parentage statute. At this juncture, we believe that the order staying the adoption proceedings is again appropriate until the parentage action concludes. Similarly, we find that parentage and adoption proceedings were appropriately consolidated and should remain consolidated until the termination of all the litigation in this matter. We disagree with the Hs.' contention that consolidation of the parentage and adoption actions prejudices their substantial rights. We also disagree that the trial court was without authority to issue a stay in the adoption proceedings. M.H. and W.H. argue that severance is appropriate because there are different issues in each action. However, both actions concern the parentage of the minor child and share a common nucleus of parties and facts. They were properly consolidated and severance is not warranted. Moreover, the Hs. offer no case law to support their claim that they have an unfettered right to proceed with the adoption action. On the contrary, the trial court found the adoption action "not ripe" because J.S.A. had not yet overcome W.H.'s presumption of paternity. At this point in the proceedings, J.S.A. has established that he is the biological father of T.H. That determination substantially affects the adoption action and J.S.A.'s participation in it. Had the trial court lifted the stay when requested, J.S.A.'s rights as T.H.'s father would have been prejudiced. We find that the the trial court properly exercised its authority to consolidate the actions and to stay the adoption proceedings.

The second issue we consider is whether the trial court should have granted the Hs.' motion

9

to enjoin the DNA test until the adoption action is concluded. Because J.S.A., M.H. and T.H. have submitted to DNA testing, we find this issue to be moot. In re Marriage of Michaelson, 359 Ill. App. 3d 706, 717, 834 N.E.2d 539, 548 (2005) (appeal moot when no actual controversy exists or subsequent events have rendered requested relief impossible to grant).

The third issue for our determination is whether the trial court erred when it denied M.H. and W.H.'s motion to dismiss J.S.A.'s motion to compel W.H. to submit to a DNA test pursuant to Supreme Court Rule 215. 210 Ill. 2d R. 215. The Hs. claim that because W.H.'s substantive rights per the Parentage Act are involved, the supreme court rules are not controlling. They further claim that the requirements in Rule 215 are not set forth in J.S.A.'s motion in that the motion does not identify the examiner and does not suggest that the DNA examiner is a licensed professional.

Rule 215 provides:

> "In any action in which the physical or mental condition of a party *** is in controversy, the court upon notice and on motion made within a reasonable time before the trial, may order such party to submit to a physical or mental examination by a licensed professional in a discipline related to the physical or mental condition which is involved. The motion shall suggest the identity of the examiner and set forth the examiner's speciality or discipline. *** The order shall fix the time, place, conditions, and scope of the examination and designate the examiner." 210 Ill. 2d R. 215.

Rule 215 regulates a motion to compel blood tests, which are considered part of the discovery process when paternity is at issue. In re Estate of Olenick, 204 Ill. App. 3d 291, 296, 562 N.E.2d

293, 296 (1990). This court will not overturn a trial court's decision to order parties to submit to testing absent an abuse of discretion. In re Marriage of Cohen, 189 Ill. App. 3d 418, 423, 545 N.E.2d 362, 366 (1989). We are aware that the results of a DNA test of W.H. in themselves are irrelevant to the question of paternity at this point in the proceedings. We review the trial court's order compelling W.H. to be tested because the consequences of W.H.'s refusal to comply resulted in a finding of contempt against him. As we find that the trial court's order compelling W.H. to submit to DNA testing was proper, we thus hold that W.H. was in contempt of court for refusing to comply and affirm the trial court's contempt finding against him.

Contrary to the claims of M.H. and W.H., the trial court has the authority pursuant to Rule 215 to compel W.H. to submit to DNA testing. The trial court found, and we agree, that W.H.'s physical condition was in controversy in the paternity action. W.H. filed a declaration of parentage in the paternity action and was joined as a party in October 1999. By doing so, he put his physical condition at issue. The Hs. assert that the trial court is limited as to whom it can compel to submit to testing by section 11(a) of the Parentage Act, and that as a specific provision, it applies over the general provision of Rule 215. 750 ILCS 45/11(a) (West 1998); 210 Ill. 2d R. 215. However, in matters of procedure, the supreme court rules control over statutory provisions. Zavaleta v. Zavaleta, 43 Ill. App. 3d 1017, 1021, 358 N.E.2d 13, 16 (1976). We also disagree with the Hs.' further claim that the circumstances in the instant case are more than procedural in that W.H.'s substantive rights as a presumed father are affected, necessitating application of the parentage statute over the supreme court rules. Happel v. Mecklenburger, 101 Ill. App. 3d 107, 114, 427 N.E.2d 974, 980 (1981) (finding that Rule 215 was an appropriate discovery tool to compel presumed father to submit to a blood test in a paternity action). We hold that Rule 215 was properly used by the trial court to

11

compel DNA testing of W.H.

We find the Hs.' argument that J.S.A.'s motion failed to comply with the requirements set forth in Rule 215 to be unconvincing. At the point in the proceedings when J.S.A. filed his motion, the parties had vigorously argued about who should and would perform the DNA test on J.S.A., M.H. and T.H. The identity and speciality of the agreed-upon DNA examiner were well known to M.H. who, as the record established, used the lab in her private practice. While technically deficient, we do not find that M.H. and W.H. can reasonably object to the form of J.S.A.'s motion. Furthermore, the purpose of Rule 215, to permit the court to order a party to submit to testing to aid discovery, was still effectuated by J.S.A.'s motion, even if it lacked some specificity of detail. See Roberts v. Norfolk & Western Ry. Co., 229 Ill. App. 3d 706, 721, 593 N.E.2d 1144, 1154 (1992). The trial court indicated that J.S.A. would be required to provide a sufficient foundation in order to admit the DNA results. Because the test results were admitted, we presume he successfully did so. We find that the trial court did not abuse its discretion by granting J.S.A.'s motion and that the trial court did not err when it denied the Hs.' motion to reconsider its initial ruling.

In summary, we reverse the trial court's dismissal of J.S.A. as a party to the adoption action, affirm its denial of M.H. and W.H.'s motion to lift stay and to sever the cases and its order compelling W.H. to submit to DNA testing, and find moot M.H.'s request to enjoin DNA testing of her and T.H.

No. 3-04-0908

The second appeal before us involves four issues raised by M.H. and W.H. They argue that the trial court lacked jurisdiction to enforce the order directing them to submit to DNA testing, that the order itself was improper, that the contempt finding against them was against the manifest weight

12

of the evidence, and that the trial court sanctioned W.H. in contravention of section 11(a) of the Parentage Act (750 ILCS 45/11(a) (West 2004)).

As a preliminary matter, we address J.S.A.'s request that we dismiss this appeal as a sanction against M.H. and W.H. J.S.A. seeks the dismissal based on M.H. and W.H.'s failure to comply with the applicable supreme court rules, their withholding of material rulings from the court's knowledge, and what he maintains is their misuse of this court to defeat his parental rights. Because we find his assertions are without merit, we deny his request for dismissal.

The first issue we discuss is whether the trial court had jurisdiction to enforce the August 24, 2004, order directing M.H. and W.H. to submit to DNA testing. M.H. and W.H. argue that because they had filed an appeal regarding the order which included the DNA directive and enforcement of the order directly interfered with the appeal and would serve to render it moot, the trial court had no jurisdiction to enforce the order directing them to submit to DNA testing. M.H. and W.H. further argue that since the court was without jurisdiction to enforce the order compelling DNA testing, the results of the DNA test should be quashed.

We find that this issue has been rendered moot by subsequent proceedings in this matter. In re Marriage of Peters-Farrell, 216 Ill. 2d 287, 291, 835 N.E.2d 797, 799 (2005) (appeal is moot if events have occurred making it impossible for the reviewing court to grant the requested relief). M.H. and W.H. rested their argument on a potential finding by this court in their favor on the matter of DNA testing. Based on our determination above in No. 3-04-0678, their jurisdictional argument has been resolved against them.

The second issue for our consideration is whether the order directing M.H., W.H. and T.H. to submit to DNA testing was improper. According to the record, the original order compelling

13

DNA testing was stayed pending resolution of M.H. and W.H.'s motion to declare the Parentage Act unconstitutional. M.H. and W.H. now contend that because the trial court failed to hold an evidentiary hearing on the issue of whether the Parentage Act is unconstitutional as applied, its analysis was rendered incomplete and the DNA order should have remained stayed. The trial court entered an order denying M.H. and W.H.'s motion to declare the Parentage Act unconstitutional on June 25, 2004, and denied their motion to reconsider in August 2004. Thereafter, the trial court heard additional arguments on the motion, and on March 18, 2005, held the Parentage Act constitutional on its face and as applied to M.H. and W.H. Because the trial court has already granted the relief requested by M.H. and W.H., we find this issue is also moot. In re Marriage of Holem, 153 Ill. App. 3d 1095, 1098, 506 N.E.2d 739, 741 (1987) (where subsequent events have occurred rendering it impossible for the reviewing court to grant effectual relief, an issue is moot).

We next consider whether the contempt finding against M.H. and W.H. for their failure to submit to DNA testing on September 9, 2004, was against the manifest weight of the evidence. The defendants complain that their failure to comply was in good faith based on their belief that the DNA order and the trial court's ruling on the constitutionality of the Parentage Act were in error. They assert that both issues were legitimately before this court in appeal No. 3-04-0678 and that the issues raised in their appeal were valid.

Indirect civil contempt is not committed in the court's presence and is coercive rather than punitive in nature. Pryweller v. Pryweller, 218 Ill. App. 3d 619, 628, 579 N.E.2d 432, 439 (1991). A party may expose himself to an order of contempt as an appropriate method of testing a court order's validity. In re Marriage of Beyer, 324 Ill. App. 3d 305, 321, 753 N.E.2d 1032, 1046 (2001). A contempt citation is properly vacated on appeal where a party's refusal to comply with a court

14

order is a good-faith effort to secure an interpretation of an issue which lacks precedent. Beyer, 324 Ill. App. 3d at 321-22, 753 N.E.2d at 1046. Whether a party is guilty of contempt is a question of fact that a reviewing court will not disturb unless the trial court's finding was against the manifest weight of the evidence. Daum v. Daum, 11 Ill. App. 3d 245, 249, 296 N.E.2d 614, 616 (1973).

As M.H. submitted to DNA testing on December 23, 2005, she purged the finding of contempt and we will not include her contempt charge in our discussion. W.H. did not submit to DNA testing and was fined $100 by the court for the discovery violation. We find that the contempt finding was appropriate. While the Hs. argue that they challenged the order requiring that they submit to DNA testing in a good-faith effort, the facts belie their claim. In June 2004, the trial court denied their motions to declare the Parentage Act unconstitutional and to dismiss J.S.A.'s motion for DNA testing of W.H. pursuant to Rule 215. In August 2004, the trial court denied their motions for reconsideration of the denials of their motions to declare the Parentage Act unconstitutional, to dismiss J.S.A.'s Rule 215 discovery request, and to enjoin the DNA test. The trial court again granted J.S.A.'s Rule 215 motion requesting W.H. submit to DNA testing. On September 2, 2004, M.H. and W.H. appealed the trial court's decision in No. 3-04-0678, and on September 9, 2004, they filed an emergency motion in this court seeking a stay of the trial court proceedings pending their appeal. We denied their motion on September 9, 2004.

As established by the record, when M.H. and W.H. refused to comply with the trial court's order that they submit to DNA testing, the trial court had twice denied their motions to enjoin the testing and denied their motion to hold the Parentage Act unconstitutional. In addition, this court had denied their motion to stay. We agree with the trial court's characterization that M.H. "has used every opportunity to hinder, delay, and obstruct" J.S.A.'s right to have DNA testing performed.

15

Moreover, we have subsequently rejected the Hs.' arguments that DNA testing was not proper. We therefore decline to vacate the contempt finding entered against W.H.

The fourth issue we consider is whether the trial court improperly determined W.H.'s nonpaternity as a sanction for his failure to submit to DNA testing. According to M.H. and W.H., the trial court's determination contravenes section 11(a) of the Parentage Act. As discussed above in No. 3-04-0678, the establishment of J.S.A. as T.H.'s biological father based on the DNA test results renders the issue of W.H.'s nonpaternity moot. In re Adoption of Walgreen, 186 Ill. 2d 362, 365, 710 N.E.2d 1226, 1227 (1999) (appeal moot when no actual controversy exists). We need not reach the merits of this argument.

We find moot M.H. and W.H.'s jurisdictional argument, their challenge to the propriety of the order compelling them to submit to DNA testing and the order finding W.H. not to be T.H.'s biological father, and M.H.'s claim regarding her contempt finding. We affirm the trial court's finding of contempt against W.H.

No. 3-05-0556

This appeal involves three issues: whether the trial court erred when it dismissed J.S.A.'s petition to determine the existence of a parent-child relationship; whether the trial court failed to apply the proper standards in denying J.S.A.'s request for visitation; and whether the trial court's denial of visitation was against the manifest weight of the evidence.

J.S.A. argues that the Parentage Act does not authorize a trial court to dismiss or deny a petition for parentage on the basis of best interest. He asserts that the Parentage Act provides a two-step procedure; first a determination of parentage, and if applicable, determinations regarding custody, visitation, and support. We agree.

The Parentage Act defines the parent and child relationship as the "legal relationship existing between a child and his natural *** parents incident to which the law confers or imposes rights, privileges, duties, and obligations." 750 ILCS 45/2 (West 2004). Section 14 of the Act provides that "[t]he judgment *** may contain provisions concerning *** custody [and] *** visitation privileges with the child." 750 ILCS 45/14(a)(1) (West 2004). The relevant factors set forth in the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq*. (West 2004)) and other applicable statutes are to be used "to guide the court in a finding in the best interests of the child." 750 ILCS 45/14(a)(1) (West 2005)) To determine custody, joint custody, removal and visitation, "the court shall apply the relevant standards of the [Marriage Act]." 750 ILCS 45/14(a)(1) (West 2004). Section 607 of the Marriage Act governs visitation. 750 ILCS 5/607 (West 2004).

The issue is one of statutory interpretation. In construing a statute, our primary objective is to give effect to the intent of the legislature, and the best indicator of that intent is the plain and ordinary language of the statute. Fisher v. Waldrop, 221 Ill. 2d 102, 112, 849 N.E.2d 334, 339 (2006). We should consider a statute in its entirety, and we may presume that the legislature did not intend absurd, inconvenient or unjust results. Fisher, 221 Ill. 2d at 112, 849 N.E.2d at 339. Moreover, in construing the statute, we should be mindful of the subject it addresses and the legislature's objective in enacting it, and avoid constructions rendering any term meaningless or superfluous. Fisher, 221 Ill. 2d at 112, 849 N.E.2d at 339. Our review is *de novo*. Fisher, 221 Ill. 2d at 112, 849 N.E.2d at 339.

J.S.A. correctly contends that the Parentage Act sets forth a two-step process in paternity determinations. First, the trial court must make a determination of parentage. Once parentage is determined, the trial court must make additional determinations regarding child support, custody and

17

visitation if so requested by a party. In the instant case, in an order issued April 27, 2005, the trial court found "[J.S.A.] is the natural father of [T.H.]" and that "[W.H.] is not the natural father of [T.H.]." The trial court proceeded to conduct a hearing following which the trial court held that it was not in T.H.'s best interest to establish a parent-child relationship with his natural father, J.S.A. The court also found that the child's best interest prohibited J.S.A. from exercising any custodial or visitation privileges with T.H. The trial court proceeded, based on a best interest standard, to deny J.S.A.'s petition to establish a parent-child relationship and to deny his request for visitation.

While the trial court properly completed the first statutory step by declaring J.S.A. to be T.H.'s natural father, it failed to recognize that the determination of parentage necessarily resulted in the determination of a parent-child relationship as defined in section 2 of the Parentage Act. 750 ILCS 45/2 (West 2004). The trial court then deviated from the clear direction of the statute by proceeding to hold a best interest hearing regarding J.S.A.'s petition to establish a parent-child relationship. We find nothing in the Parentage Act that inserts an interim step between the determination of parentage and the determination of support, custody and visitation issues. As previously recognized by this court in the first appeal in this matter, a trial court has no inherent authority to deviate from the plain language of the Parentage Act and exceed its parameters. J.S.A., 343 Ill. App. 3d at 221, 797 N.E.2d at 708. As we interpret the statute, the court granted J.S.A.'s petition to establish a parent-child relationship when it entered the order of parentage on April 27, 2005.

Having determined parentage, the trial court was then required to consider what rights and privileges J.S.A. would be entitled to enjoy as a result of the parentage determination. The record is confusing on this matter. At a May 25, 2005, hearing, both parties and the trial court agreed that

18

J.S.A.'s request for visitation was at issue. The trial court specifically asked J.S.A. what amount of time or visitation he was seeking with T.H. The Hs. argued that it was not in T.H.'s best interest for J.S.A. to exercise his paternity, *i.e.*, be granted visitation. In making its ruling on June 23, 2005, the trial court enumerated the factors set forth in section 602 of the Marriage Act (750 ILCS 5/602 (West 2004)) and in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2004), and stated, "it's in the best interest that "T" remain in the custody of Mr. and Mrs. H., that the petition to establish a parent/child relationship should be denied." In its written order, the court stated "that it is not in the best interest of the minor child that J.S.A. should be entitled to exercise any custodial or visitation privileges with the minor child. Accordingly, the request by J.S.A. to establish a parent/child relationship and the accompanying parental rights is denied." At a subsequent hearing on J.S.A.'s motion for a new trial, the trial court clarified that the Parentage Act dictates a two-step process: the first step involves the determination of a biological relationship; the second step concerns whether it is in the child's the best interest for the parent-child relationship to be established. The trial court then informed J.S.A. that it had not held a hearing on visitation but rather on J.S.A's petition to establish a parent-child relationship.

As the record demonstrates, the trial court failed to follow the mandates of the statute. Once parentage is established, a petition to establish a parent-child relationship must be granted. Accordingly, we find that the trial court erred by denying J.S.A.'s petition to establish a parent-child relationship, as the court implicitly found that the relationship was established through the DNA results. Additionally, the court erred when it failed to hold a hearing on visitation. Once the trial court granted J.S.A.'s petition to establish a parent-child relationship, it was then to proceed to determine what other parental rights and obligations to confer upon J.S.A. In this case J.S.A. was

not seeking custody of T.H. and was making an initial request for visitation with the minor child. In such a circumstance the trial court should have employed section 607(a) of the Marriage Act. 750 ILCS 5/607(a) (West 2004). Here the trial court conducted a best interest hearing pursuant to section 607©) as if this were a petition to modify visitation. The trial court erred in so doing. We therefore reverse and remand for a hearing regarding J.S.A.'s request for visitation with T.H. pursuant to section 607(a) of the Marriage Act. 750 ILCS 5/607(a) (West 2004). Because the parties have stipulated, and the trial court has accepted, the evidence as presented in the original best interest hearing, on remand, the trial court may consider the stipulated evidence under the serious endangerment standard.

In summary, we affirm the trial court's order of parentage entered April 27, 2005. We affirm the court's ruling making M.H. the custodial parent of T.H. and reverse the denial of J.S.A.'s petition to establish a parent-child relationship and remand the matter for a hearing on visitation as set forth above.

No. 3-05-0561

The final appeal before us involves four issues. J.S.A. raises two issues for our consideration and M.H. and W.H. raise two issues in a cross-appeal. J.S.A. argues that the trial court improperly denied his motion for a stay of the adoption proceedings and improperly granted partial summary judgment in favor of M.H. and W.H. based on his failure to register with the Putative Father Registry. In their cross-appeal, M.H. and W.H. argue that the trial court improperly determined that J.S.A.'s failure to register did not bar J.S.A. from maintaining any action to assert an interest in T.H. and did not constitute a waiver of his right to notice in the adoption proceeding.

We begin with J.S.A.'s arguments. His first contention is that the trial court improperly

20

denied his motion to stay the adoption proceeding until his appeal concerning the denial of his petition to establish a parent-child relationship was resolved. J.S.A. contends that staying the adoption changes nothing as to the child, that proceeding with the adoption only hastens M.H.'s attempts to eliminate him from his son's life, and that to find him unfit sufficient to terminate his parental rights is contingent on what J.S.A. asserts is an erroneous disposition in the parentage action.

Rule 305(b) governs stays of nonmoney judgments and other appealable orders pending appeal. 210 Ill. 2d R. 305(b). A stay pending appeal is intended to preserve the status quo and the fruits of a meritorious appeal where they might otherwise be lost. In re A. P., 285 Ill. App. 3d 897, 901, 675 N.E.2d 989, 993 (1997). The trial court's authority to stay proceedings before it derives from its inherent power to control the disposition of cases before it. Disciplined Investment Advisors, Inc. v. Schweihs, 272 Ill. App. 3d 681, 692, 650 N.E.2d 578, 585 (1995), quoting Vasa North Atlantic Insurance Co. v. Selcke, 261 Ill. App. 3d 626, 628, 633 N.E.2d 865, 868 (1994). Factors to be considered when determining whether to issue stay pending subsequent litigation include the prevention of multiplicity, vexation, harassment, the orderly administration of justice, judicial economy, comity, the *res judicata* effect of the foreign judgment and the likelihood of obtaining complete relief in the foreign jurisdiction. Vasa North Atlantic Insurance Co., 261 Ill. App. 3d at 628-29, 633 N.E.2d at 868. We review a court's determination whether to grant a stay pending appeal for an abuse of discretion. Fick v. Weedon, 244 Ill. App. 3d 413, 418, 613 N.E.2d 362, 365 (1993).

We find that the trial court abused its discretion in denying J.S.A.'s oral motion for a stay pending resolution of his appeal of the dismissal of his petition to establish a parent-child

21

relationship. The issuance of a stay was necessary for the orderly administration of justice and to maintain judicial economy. As we have determined below that the trial court's dismissal of J.S.A.'s parentage petition was in error, a stay in the adoption proceedings was and continues to be necessary to ensure that J.S.A. has an opportunity to be awarded the rights which the parentage action may bestow upon him. If the adoption proceeding advanced before our decision on issues in the appeal of the parentage action, the consequences in the parentage action could be substantial and would potentially serve to deprive J.S.A. of his rights as T.H.'s biological father.

Because J.S.A.'s request for a stay was denied in error, we vacate all subsequent rulings in the adoption action, including the trial court's ruling on the Hs.' motion for summary judgment. In re Adoption of G.L.G., 307 Ill. App. 3d 953, 965, 718 N.E.2d 360, 370 (1999) (vacating order entered after erroneous dismissal of adoption petition). We note, however, that the issues raised in the summary judgment motion were discussed and decided by the supreme court, which determined that the Putative Father Registry did not apply to the particular facts of the instant actions. J.S.A., 224 Ill. 2d at 206, 863 N.E.2d at 250.

We reverse the trial court's denial of J.S.A.'s motion for a stay in the adoption action and vacate the trial court's order granting in part and denying in part the Hs.' motion for partial summary judgment.

For the foregoing reasons, the judgments of the circuit court of Will County are reversed in part, affirmed in part, vacated in part, and remanded in part.

No. 3-04-0678, Reversed in part and affirmed in part.

No. 3-04-0908, Affirmed.

No. 3-05-0556, Affirmed in part and reversed in part; cause remanded.

22

No. 3-05-0561, Reversed in part and vacated in part.

LYTTON, J., concurs.


JUSTICE SCHMIDT, dissenting:

                                I.

As explained below, I believe that *J.S.A.* was wrongly decided by the supreme court. That being said, we in the appellate court are still bound by it. Inexplicably, the majority reverses the trial court on the basis that the trial court did exactly what the supreme court told it to do. The supreme court made it clear that, "As stated, the Parentage Act specifically provides in section 14(a)(1) that decisions regarding the involvement of the biological father in the life of the child are to be governed solely by what is in the child's best interests." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 211, 863 N.E.2d 236, 253 (2007). The supreme court went on to direct:

> "Accordingly, 'even though paternity may be established
> upon the filing of a petition pursuant to section 7(a),
> any parental rights of the biological father, such as the
> right to have custody of, or visitation with, the child, shall
> not be granted unless it is in the child's best interest.'
> [Citation.]
>
>     Therefore, under this statutory scheme, subsequent
> to the circuit court's declaration of paternity that

23

court is required to conduct a best-interests hearing to determine whether, and to what extent, the natural father may exercise any rights with respect to the child." *J.S.A.*, 224 Ill. 2d at 212, 863 N.E.2d at 253.

The majority apparently disagrees with the supreme court's construction of Rule 14(a); superimposes its own; and reverses the trial court for doing exactly what the supreme court told it to do: Hold a best interests hearing to determine what rights or visitation J.S.A. should have with the child.

What we really have here is a modification of visitation as opposed to simply setting up a visitation schedule in a garden variety divorce. J.S.A. totally abandoned T.H. for the first 3½ years of the child's life while J.S.A. knew that T.H. and W.C.H. were creating a father-son bond. Only when the mother ended her affair with him did J.S.A. file his action under the Parentage Act. Reasonable people can conclude that J.S.A.'s only motive is to punish M.H. for breaking off the affair, as opposed to his claimed love for the child. Not once in any pleading has J.S.A. suggested that he should have any financial obligations toward the child. He argues that he has other children who would like to meet their little brother. Where were these arguments when T.H. was three months old? Six months? One year? Two years? Three years? J.S.A. has no relationship with this child. The child (now approximately 12 years old) has no relationship with J.S.A. To

24

allow J.S.A. visitation rights with this child would be a "modification of visitation" of the highest order. Therefore, section 607(a) is simply not relevant to the facts of this case.

Furthermore, application of section 607(a) is improper because it presumes to be applied to someone seeking visitation who has full parental rights. For that reason, the burden of proof under section 607(a) is on the person opposing visitation to establish that visitation would endanger the child. A section 607(a) hearing is not a "best-interests" hearing as ordered by the supreme court.

The majority has misread not only the supreme court's opinion above but also the statute and concluded that a finding of paternity necessarily results in an establishment of a parent-child relationship with all the attendant rights and obligations. When addressing the arguments of M.H. and W.C.H. (that J.S.A. would want to be involved in the child's life as his "father"), the supreme court said, "As we have recently explained, the right of a biological father to establish paternity to a child born to a marriage does not also mean that the legal rights flowing from the parent and child relationship are automatically conferred." *J.S.A.*, 224 Ill. 2d at 211, 863 N.E.2d at 253.

The majority's conclusion that a determination of paternity automatically required the finding of a parent-child relationship between J.S.A. and T.H. is further contradicted by section 15(a) of the Parentage Act, which deals with enforcement. 750 ILCS 45/15(a)

25

(West 1998).  That section states:

> "If existence of the parent and child relationship is declared, <u>or</u> paternity or duty of support has been established under this Act ***." (Emphasis added.)  750 ILCS 45/15(a) (West 1998).

The use of the disjunctive makes it clear that there can be an order of paternity under the Act without the declaration of the existence of a parent-child relationship.  The Act defines a parent-child relationship for purposes of the Act to mean "the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations.  It includes the mother and child relationship and the father and child relationship."  750 ILCS 45/2 (West 1998).

Under section 5 of the Parentage Act, a presumptive father is considered to be a natural father.  Therefore, at the time that J.S.A. brought his action, there was a parent-child relationship between W.C.H. and T.H.  It seems clear from reading the Parentage Act as a whole that a child can have a parent-child relationship with, at most, two people: a mother and a father.  There is nothing in the Act that allows J.S.A., or one similarly situated, to bring an action to declare the nonexistence of the parent-child relationship between T.H. and W.C.H.  Section 7(b) identifies those

26

who can bring an action to declare the nonexistence of the parent-child relationship as "the child, the natural mother, or a man presumed to be the father under subdivision (a)(1) or (a)(2) of Section 5 of this Act."  750 ILCS 45/7(b) (West 1998).  No mention of one in J.S.A.'s position.

Section 8(3) would bar any attempt by W.C.H. or M.H. to bring an action to declare the nonexistence of the parent-child relationship between T.H. and W.C.H. as more than two years have passed since they obtained knowledge of "relevant facts."  750 ILCS 45/8(a)(3) (West 1998).  Under the Act, the only person who can now attack the parent-child relationship between T.H. and W.C.H. is T.H.  Of course, it is worth saying again that W.C.H., in words and conduct, has made it abundantly clear that he has no desire to declare the nonexistence of a parent-child relationship with his son, T.H.  The purpose of the Illinois Parentage Act (formerly known by less sensitive terms) has always been to make sure that parents supported their children.  *Berg v. Garrett*, 224 Ill. App. 3d 619, 587 N.E.2d 1 (1992); *People ex rel. Blackmon v. Brent*, 97 Ill. App. 2d 438, 240 N.E.2d 255 (1968).

The majority opinion, finding a parent-child relationship between J.S.A. and T.H., seems to presuppose that upon the DNA match between J.S.A. and T.H., the legal parent-child relationship between W.C.H. and T.H. simply evaporated.  It did not.  Nor did it evaporate upon the order of paternity.  No court has found the

27

nonexistence of the parent-child relationship between W.C.H. and T.H. As indicated above, J.S.A. is not a person who can petition the court for such an order.

Quite bluntly, the purpose of the Act was to keep children born out of wedlock from becoming wards of the State and making sure that they had someone who was legally obligated to support them. W.C.H. still has a parent-child relationship with T.H. and the only person who can now attack that relationship is T.H. 750 ILCS 45/8(a)(3) (West 1998). The Act does not identify someone in J.S.A.'s position as one who can attack the parent-child relationship between T.H. and W.C.H. See 750 ILCS 45/7(b) (West 1998). *Expressio unius est exclusio alterius.*

The court below did exactly what the supreme court told it to do. It held a best interests hearing with evidence stipulated to by the parties and denied J.S.A. visitation rights. I would affirm the order and let the adoption proceed. Furthermore, I would vacate the finding of contempt against W.C.H. (We acknowledge that the evidence sought from W.C.H. is irrelevant to any issue.)

## II.

The above dissent is based upon my best attempt to interpret and apply the supreme court's decision in *J.S.A.*, 224 Ill. 2d 182, 863 N.E.2d 236 (2007). However, the *J.S.A.* decision misses the point of the Parentage Act and stands the true intent (as well as the clear language) of the legislature on its head. Furthermore,

28

the decision misinterprets the Adoption Act. The supreme court had some help in misinterpreting the Adoption Act since we also got it wrong in our previous decision. *J.S.A.*, 361 Ill. App. 3d 745, 841 N.E.2d 983 (2005).

In our 2005 opinion, we held that because he had not filed with the Putative Father Registry, J.S.A. could not even bring the paternity action. *J.S.A.*, 361 Ill. App. 3d 745, 749, 841 N.E.2d 983, 986 (2005). We were wrong as the supreme court correctly noted. *J.S.A.*, 224 Ill. 2d at 210, 863 N.E.2d at 252. The Adoption Act defines a "putative father" for purposes of the Act as "a man who may be a child's father, but who (1) is not married to the child's mother on or before the date that the child was or is to be born and (2) <u>has not established paternity</u> of the child in a court proceeding <u>before the filing of a petition for the adoption</u> of the child." (Emphasis added.) 750 ILCS 50/1R (West 1998). This language clearly shows that the Putative Father Registry is not an issue until an adoption action is filed. Had J.S.A. secured an order of paternity before the adoption action was filed, then he would not be a "putative father" for purposes of the Adoption Act and the Putative Father Registry would not apply. However, that is not what happened here. An adoption action was filed by W.C.H. and, therefore, under the clear language above, the paternity action should have been dismissed on motion since J.S.A. provided none of the statutory reasons for failing to file with the Putative

29

Father Registry and, therefore, was barred from "bringing <u>or maintaining any action</u> to assert <u>any interest</u> in the child." (Emphasis added.) 750 ILCS 50/12.1(g) (West 1998).

The supreme court stated "the plain language of both the Parentage Act and the Putative Father Registry provides no indication that the Putative Father Registry provisions were intended by the General Assembly to apply to filings under the Parentage Act when there is no adoption action pending or contemplated at the time a parentage action is filed." *J.S.A.*, 224 Ill. 2d at 207, 863 N.E.2d at 251. This language by the supreme court ignores the "or maintaining" language of section 12.1(g) (750 ILCS 50/12.1(g) (West 1998)). It also ignores the definition of putative father as one who "has not <u>established paternity</u> of the child in a court proceeding <u>before the filing</u> of a petition for the adoption of the child." (Emphasis added.) 750 ILCS 50/1R (West 1998). How much of an indication do we need? Had the legislature agreed with the supreme court, section (2) of the definition of putative father at section 1R would read "has not filed a paternity action in a court before the filing of a petition for the adoption of a child." Furthermore, if the supreme court is correct, there would no reason for the "or maintaining" language in section 12.1(g), since the filing of a paternity action before the filing of an adoption action would prevent the dismissal of any action on file. The "or maintaining" language at section 12.1(g) can only

30

refer to pending actions filed before the adoption petition. Otherwise, the phrase "or maintaining" is meaningless surplusage, a construction which is to be avoided. *Caveney v. Bower*, 207 Ill. 2d 82, 90, 797 N.E.2d 596, 600 (2003).

In its decision, the supreme court seemed to find several facts relevant. It appears that the court does not consider the adoption action filed by W.C.H. as a *bona fide* adoption. See *J.S.A.*, 224 Ill. 2d at 205, 863 N.E.2d at 250-51. What could be a more *bona fide* adoption than one filed by a man who had raised the child from birth and had just recently learned that someone else was claiming to be the child's biological father? Adoptive parents will tell those who have never had the experience that DNA markers have nothing to do with the love between a parent and child. They will tell you that it is inconceivable to them that one could love a biological child more than they love their adopted child. Would the adoption be "*bona fide*" if a man who had only just met the child was trying to adopt him?

The supreme court also looked at the public policy behind the Parentage Act as the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act. *J.S.A.*, 224 Ill. 2d at 198, 863 N.E.2d at 246. T.H. has always had that with W.C.H. and M.H.

Another apparent factor in the supreme court's decision is the statement that J.S.A. should not have expected an adoption action

31

to be filed. *J.S.A.*, 224 Ill. 2d at 206, 863 N.E.2d at 250. Where did this come from? What does what J.S.A. expected or did not expect have to do with anything? Why would J.S.A. not expect W.C.H. to file an adoption action in the face of the news that some other man was claiming to be the father? Had M.H. been single when she had an affair with J.S.A., and if W.C.H. were now trying to adopt T.H., would the same argument work? The stability of T.H.'s life is no less important because he was born into the marriage of M.H. and W.C.H. than it would be had he been born to a single parent. There is nothing in the language of either the Adoption Act or the Parentage Act which could make what J.S.A. expected or did not expect to be relevant to the facts of this case. Furthermore, J.S.A. knew that he was the biological father of T.H. from at least the time of T.H.'s birth. He also knew that neither W.C.H. nor T.H. knew of this. Of course, W.C.H. did not file an adoption action before J.S.A. filed his paternity action. W.C.H. did not think he had a reason to adopt T.H.; he thought he was the biological father.

In support of its position that J.S.A. should not have expected an adoption action to be filed, the court notes that "W.C.H. took the position-even in the adoption petition itself-that he was the child's biological father." *J.S.A.*, 224 Ill. 2d at 206, 863 N.E.2d at 250. First of all, what W.C.H. pled in his adoption petition has nothing to do with what J.S.A. would or should have

32

expected before the petition was filed.  Second, the proof was not in on the paternity action when the adoption petition was filed. Why should W.C.H. be required to admit that he was not the biological father when he did not even know that he was not the biological father and had just recently been hit with allegations that he was not?  With all due respect, it seems 180 degrees from fair to punish W.C.H. for his lack of knowledge of facts known by J.S.A. for at least 3½ years before he filed his paternity action. The only reason J.S.A. would not expect W.C.H. to file an adoption petition is that J.S.A. knew he had knowledge superior to that of W.C.H.  All of this being said, there is no statutory basis for considering what J.S.A. did or did not expect.

The supreme court also concluded that if it were to take the arguments advanced at bar by M.H. and W.C.H. to their logical conclusion, "no biological father could ever bring a petition to establish a father-child relationship if he failed to register with the Putative Father Registry within 30 days of the child's birth." *J.S.A.*, 224 Ill. 2d at 210, 863 N.E.2d at 252.  Not so.  I do not know for sure what arguments M.H. and W.C.H. advanced at the bar before the supreme court, but most likely they argued the incorrect holding of this court.  I participated in that decision and it is my position now that that decision was wrong.  However, the law is too important for a judge to try to defend a prior decision when it was clearly erroneous.  The supreme court's fears that no

33

biological father could ever bring a petition to establish the father-child relationship if he failed to register with the Putative Father Registry within 30 days of the child's birth are allayed with the correct reading of the statutes. One needs to look at the definition of putative father contained at section 1R (750 ILCS 50/1R (West 1998)). Until the adoption action was filed, J.S.A. was not a putative father under the Act and, therefore, the Putative Father Registry was no bar to his paternity action. However, when the adoption action was filed before paternity was established, J.S.A. became a putative father and was barred from interfering in the adoption or maintaining his action to establish a parent-child relationship with T.H. See 750 ILCS 50/1R, 12.1(g) (West 1998). The statutory language and therefore the legislative intent could not be clearer.

Under the correct reading of the relevant statutes, a man claiming to be the biological father of a child and who has not registered with the Putative Father Registry within the statutory period and who has no other statutory excuses for not having registered can still bring a parentage action at any time until the child's twentieth birthday subject to the provisions of the Adoption Act. If the adoption action is filed before the paternity action is filed, the paternity action must be dismissed immediately upon motion. If an adoption action is filed before the man has established paternity of the child in a court proceeding, then the

pending action cannot be <u>maintained</u> and must be dismissed upon motion. (Emphasis added.) See 750 ILCS 50/1R, 12.1(g) (West 1998). On the other hand, if no one seeks to adopt the child before paternity is established, then an order of paternity may be entered.

There is no doubt that the legislature indicated that the existence of a presumptive father is no bar to a paternity action by someone claiming to be the biological father of a child. See *J.S.A.*, 224 Ill. 2d at 203, 863 N.E.2d at 248. However, it cannot reasonably be construed to mean that somehow the legislature intended to give more rights to a man who has an affair and impregnates a married woman than one who has an affair and impregnates a single woman. The language simply means what it says: that the existence of a presumptive father is no bar to bringing a paternity action. If the presumptive father does not file an adoption action, the paternity action may proceed.

In conclusion, the plain language of the Adoption Act (750 ILCS 50/1R, 12.1(g) (West 1998)) makes it clear that the court was wrong when it stated "the plain language of both the Parentage Act and the Putative Father Registry provides no indication that the Putative Father Registry provisions were intended by the General Assembly to apply to filings under the Parentage Act when there is no adoption action pending or contemplated at the time a parentage petition is filed." *J.S.A.*, 224 Ill. 2d at 207, 863 N.E.2d at 251.

35

I respectfully submit that we got it wrong[1] the first time and this error on our part may have misguided the parties and the supreme court, leading to the supreme court's decision in *J.S.A.* The decision cannot be defended on the basis of either sound social or legal policy. I can think of no social or legal policy that supports this decision. As a result of this decision, we argue in our court whether the common law dictates of the supreme court or the statutory directive of the legislature control what type of hearing must be held below (best interest or section 607(a)) on the issue of J.S.A.'s claims for visitation. The unspoken problem is that the supreme court's decision leaves in its wake the question: who is T.H.'s legal father? If J.S.A. is the legal father, the majority correctly holds that a section 607(a) hearing is appropriate. If W.C.H. is the legal father, why should J.S.A. have visitation under any circumstances? What is W.C.H.'s status? Who now has the legal duty to support T.H.? Is there some kind of hybrid "legal father" with no duties but rights to visitation?

A correct reading of the statutes would obviate the need for the courts to fashion common law to deal with this situation. Under the facts of this case, and because the adoption action was

---

[1]While the result in our *J.S.A.* (361 Ill. App. 3d 745, 841 N.E.2d 983) decision was the correct one, the analysis was flawed for the reasons set forth above. J.S.A.'s paternity action should have been dismissed, not because it was void *ab initio*, but rather because W.C.H. and M.H. filed an adoption action before paternity was established in a court proceeding.

36

filed before paternity was established in a court proceeding, the paternity action should have been dismissed on motion and the adoption action should have gone forward.

As a matter of a social and legal policy, the supreme court should revisit its decision in *J.S.A.*