**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170802-U

Order filed May 22, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| JOHN V., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Petitioner, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| REBECCA Z., | ) | |
| | ) | |
| Respondent. | ) | Appeal No. 3-17-0802 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | Circuit No. 16-F-799, 17-F-378 |
| | ) | |
| DAVID O., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN V., | ) | Honorable |
| | ) | Jessica Colon-Sayre, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:   The trial court did not err by granting the acknowledged father's motion to dismiss a petition to establish a father-child relationship and for genetic testing

filed by a man claiming to be the biological father of the child where the petition was procedurally barred pursuant to section 609(b) of the Illinois Parentage Act of 2015 (750 ILCS 46/609(b) (West 2016)).

¶ 2        Petitioner, David O., filed a verified petition to establish the existence of a father-child relationship and for genetic testing, claiming that he was the biological father of E.Z. Respondent, John V., had previously filed a voluntary acknowledgement of paternity as to E.Z., and filed a motion to dismiss David's petition. The trial court granted John's motion to dismiss. David appealed. We affirm the trial court's order granting John's motion to dismiss.

¶ 3                                    I. Background

¶ 4        E.Z. was born in September 2007. On July 19, 2016, when E.Z. was eight years old, her mother, Rebecca Z., died.

¶ 5                            A. Case Number 16-F-799

¶ 6        In case number 16-F-799, on July 13, 2016, John filed a verified emergency petition for the allocation of parental rights and responsibilities of E.Z., naming E.Z.'s mother, Rebecca, as the respondent. In the alternative, John sought to adopt E.Z. and requested that a guardian *ad litem* be appointed for E.Z.

¶ 7        In the verified emergency petition, John acknowledged that he was not E.Z.'s biological father but alleged that: he and Rebecca had begun dating in April 2008; John began living with E.Z. and Rebecca in June 2008; in June 2014, John signed a voluntary acknowledgment of paternity and entered it with the Illinois Department of Health; an amended birth certificate for E.Z. was issued by the Illinois Department of Health on June 26, 2014, which listed John as E.Z.'s father (a copy of the birth certificate was attached to John's petition); after separating from Rebecca in March 2016, John exercised continuous and liberal parenting time with E.Z., including multiple days during the week and every other weekend; at the time John filed the

2

emergency petition (on July 13, 2016), Rebecca was terminally ill, was residing with her family in hospice care, and was no longer physically or mentally able to care for E.Z.; and after Rebecca's health declined, Rebecca's family refused to allow John to speak with or to have any parenting time with E.Z. (since father's day on June 12, 2016).

¶ 8        In the alternative, John requested that he be allowed to adopt E.Z., alleging that E.Z.'s biological father had failed to register with the Putative Father Registry, as required by statute. John attached a copy of a Certification of Putative Father Registry, which indicated that as of July 12, 2016, no registration of a putative father relating to E.Z. or Rebecca could be located.

¶ 9        On July 18, 2016, the trial court in case number 16-F-799 granted John's request for parenting time and continued the case for allocation of parental rights and responsibilities and for the appointment of a guardian *ad litem*. On July 19, 2016, Rebecca died.

¶ 10        On July 21, 2016, the trial court entered an order indicating John was "awarded custody of the minor child E.Z. as respondent is deceased" and that E.Z. "shall be turned over to her father, [John]." On July 29, 2016, E.Z.'s maternal aunt and grandfather filed a petition for leave to intervene in case number 16-F-799, regarding the allocation of parental responsibilities of E.Z. A written order entered on August 1, 2016, indicated that John's voluntary acknowledgment of paternity was filed in open court and made part of John's pleadings. On August 22, 2016, John filed a motion to strike and dismiss the motion to intervene filed by E.Z.'s maternal aunt and grandfather.

¶ 11        On September 27, 2016, although he was not a party in the case and had not requested leave to intervene in the case, David (from prison) sent the trial court in case number 16-F-799 a letter and a *pro se* "petition to establish existence or non-existence father-child relationship" in regard to E.Z. In the letter, David claimed that in the hours prior to her death, Rebecca had

revealed that David was the biological father of E.Z. and that it was her dying wish for her sister to have custody of E.Z. until David was released from prison. In his *pro se* petition, David indicated that from February 2006 until June 2007, he and Rebecca had cohabitated and had sexual relations, and then he became incarcerated on August 21, 2007 (just prior to E.Z.'s birth in September 2007). David requested that a guardian *ad litem* be appointed until the parentage of E.Z.'s father could be determined and requested that the court order a DNA test to prove "the existence or nonexistence of [his] parenthood to establish a father-child relationship."

¶ 12       On October 18, 2016, a hearing took place on John's motion to dismiss the petition to intervene filed by E.Z.'s aunt and grandfather. The trial court entered a written order indicating E.Z.'s aunt and grandfather had voluntarily withdrawn their petition for leave to intervene without prejudice. The trial court noted there were no other pending motions and the matter was "off the call." On February 7, 2017, David sent duplicate copies of his letter and *pro se* petition to the trial court in case number 16-F-799 and requested a status update.

¶ 13                          B. Case Number 17-F-378

¶ 14       On May 5, 2017, in case number 17-F-378, David, by and through his attorneys, pursuant to the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/101 *et seq*. (West 2016)), filed a verified petition for genetic testing and to establish the existence of a father-child relationship with E.Z., with David alleging that he was the biological father of E.Z. David also alleged that Rebecca was not married at the time of E.Z.'s birth, to the best of his knowledge E.Z.'s birth certificate did not indicate "parentage," and upon information and belief, "no action for parentage ha[d] ever been commenced." David acknowledged that John claimed paternity of E.Z. but argued that DNA testing had not been performed. David requested that the trial court order DNA testing and enter an order establishing the parentage of E.Z.

4

¶ 15    John filed a motion to strike and dismiss David's petition pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)). In his motion to dismiss, John alleged that: he was the adjudicated and acknowledged father of E.Z.; he had executed a voluntary acknowledgment of paternity of E.Z. on June 30, 2014; a birth certificate for E.Z. had been issued naming him as E.Z.'s father; after the death of Rebecca, he was awarded custody of E.Z. in case number 16-F-799, on July 21, 2016; and on August 1, 2016, he had filed the voluntary acknowledgment of paternity with the circuit court in case number 16-F-799. John argued David's verified petition was barred pursuant to section 2-619(a)(4) of the Code (735 ILCS 5/619(a)(4) (West 2016)) by a prior judgment (the voluntary acknowledgment of paternity, birth certificate, and prior order granting John custody of E.Z.) and barred pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/619(a)(5) (West 2016)) because David's petition was not commenced within the time limited by law, as set forth in section 609(b) of the Illinois Parentage Act of 2015 (750 ILCS 46/609(b) (West 2016)). John requested that the trial court enter an order dismissing David's petition to establish the existence of a father-child relationship with E.Z. with prejudice.

¶ 16    In response to John's motion to dismiss, David argued that he had standing to request genetic testing in accordance with section 602 of the Illinois Parentage Act of 2015 (750 ILCS 46/602 (West 2016)). David also argued that his petition was not barred by a prior judgment where he had not previously been given notice or an opportunity to be heard and his rights had not previously been adjudicated on the merits following due notice to him.

¶ 17    John filed a motion to consolidate the case number 17-F-378 with case number 16-F-799. On August 2, 2017, the trial court granted John's motion and consolidated case number 17-F-378 with case number 16-F-799.

¶ 18        C. Proceedings Subsequent to Consolidation

¶ 19   On October 25, 2017, a hearing on John's motion to dismiss David's verified petition took place. The trial court entered a written order indicating, "David O[.]'s verified petition to establish existence of father-child relationship and for genetic testing is dismissed, without prejudice, and Johnathon V[.]'s motion to dismiss is granted."

¶ 20   David appealed.[1]

¶ 21           II. ANALYSIS

¶ 22   In his *pro se* brief on appeal, David argues that the trial court erred in dismissing his petition to establish the existence of a father-child relationship and for genetic testing.[2] In his brief, David indicates that: he began dating E.Z.'s mother, Rebecca, in January 2008; after they ended their relationship some months later, Rebecca told David that she was pregnant with E.Z. but she was unsure of the father; Rebecca had also been seeing the father of her other child, O.Z.; David was incarcerated before the birth of E.Z.; David learned that E.Z. was born prematurely in September 2008; and in March 2009, Rebecca told David that a DNA test revealed that E.Z.'s DNA matched the DNA of the other man; David never heard from Rebecca again; on September 4, 2016, while in prison, David received a letter from Rebecca's sister indicating that Rebecca had passed away, E.Z. was David's biological daughter, and Rebecca's family needed help "to

---

[1] During the pendency of this appeal, on December 8, 2017, an order was entered, by agreement, to allow E.Z.'s maternal grandfather the right to reasonable grandparent visitation with E.Z.

[2] In his brief on appeal, David refers to his dismissed pleading as his "motion to establish existence or non-existence of the father-child relationship and genetic testing." Although in September 2016 and February 2017, David mailed the trial court a "Petition to Establish Existence or Non-Existence Father-Child Relationship" in case number 16-F-799, David was not a party at that time and those petitions were never properly filed or presented for a hearing. The only pleading that is the subject of this appeal is David's "Verified Petition to Establish Existence of Father-Child Relationship and for Genetic Testing" filed on May 5, 2017, in which David requested genetic testing and an order establishing parentage, which the trial court dismissed. We interpret David's arguments on appeal to be solely in reference to that pleading filed on May 5, 2017.

get E.Z. away from" John immediately. David argues that due to Rebecca's misrepresentation that another man's DNA matched E.Z.'s DNA, he cannot be held to the statutory two-year "deadline" set forth in section 609(b) of the Parentage Act of 2015.

¶ 23    More specifically, David argues that the trial court erred in dismissing his petition because his due process rights were violated where Rebecca and John concealed the fact that there was a strong possibility that he was the biological father of E.Z. in order to surpass the two year "deadline" set forth section 609(b) of the Illinois Parentage Act of 2015. David also argues that because he was not given notice and an opportunity to be heard "before June 30, 2014, of the adjudication hearing" (presumably at the time of voluntary acknowledgment paternity was executed), the trial court's award of custody to John on July 21, 2016, was void. David further contends that the two-year deadline set forth in section 309(a) of the Illinois Parentage Act of 2015 challenges a voluntary acknowledgment of paternity on the basis of fraud, duress, or material mistake of fact is not applicable because the language of section 309(a) provides that the time during which "the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years [750 ILCS 46/309(a) (West 2016)]."

¶ 24    Additionally, David argues on appeal that he received ineffective assistance of counsel. David argues he was prejudiced by his counsel's deficient performance because his counsel did not communicate with him, which resulted in David being unable to inform his counsel about Rebecca's fraudulent statement that David was not biological father of E.Z. Furthermore, David contends he received ineffective assistance of counsel because his counsel never had his best interest come first where he was "second party to a court proceeding in which the first party [presumably Rebecca's family] was making payments," but although David gives no further factual or legal support for this argument.

7

¶ 25    Finally, David argues the trial court erred in dismissing his petition "due to newly discovered evidence." In support of this argument, David references "new evidence" that was sent to him in September 2016, being that of the letter from Rebecca's sister informing him that he could be E.Z.'s biological father.

¶ 26    John did not file an appellee's brief. Nevertheless, we may decide this appeal without the benefit of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (a reviewing court can decide the merits of the appeal where the record is simple and the claimed errors can be decided without the aid of an appellee's brief).

¶ 27                                    A. Jurisdiction

¶ 28    A reviewing court has an independent duty to *sua sponte* consider its own jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). This court's jurisdiction is derived from the Illinois Constitution and the rules prescribed by our supreme court. See Ill. Const. 1970, art. VI, § 6 (providing that appeals from "final judgments" of a circuit court are a matter of right to the appellate court and granting our supreme court the right to "provide by rule for appeals to the Appellate Court from other than final judgments). Under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), "[e]very final judgment of a circuit court in a civil case is appealable as of right." A final order is one that "ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). Absent an exception provided by our supreme court, this court is without jurisdiction to review judgments, orders, or decrees that are not final. *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 9. Generally, a dismissal of a complaint "without prejudice" is not final and appealable. *Flores*, 91 Ill. 2d at 114; *People v. Vari*, 2016 IL App (3d) 140278, ¶ 10.

¶ 29          In this case, the trial court's written order indicated that David's petition to establish existence of father-child relationship and for genetic testing was dismissed "without prejudice," but it also indicated that John's motion to dismiss the petition was granted. There is no transcript of the proceedings and there is no bystander's report included in the record on the appeal to clarify whether the trial court's inclusion of the phrase "without prejudice" was intentional. Our review of John's motion, indicates that the trial court granted the motion to dismiss based upon John's argument that the petition should be dismissed either pursuant to section 2-619(a)(4) of the Code as being barred by a prior judgment or dismissed as being barred pursuant to section 2-619(a)(5) of the Code because it was not commenced within the time limited by law. In dismissing David's petition as being barred pursuant to section 2-619 of the Code, the trial court "ascertain[ed] and fix[ed] absolutely and finally the rights of the parties." See *Flores*, 91 Ill. 2d at 112. Therefore, a final and appealable order exists, and this court has jurisdiction to consider the merits of David's appeal related to the dismissal of his petition pursuant to 2-619 of the Code.

¶ 30                                    B. Trial Court's Dismissal Order

¶ 31          A motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the complaint but asserts an affirmative matter outside the pleading that defeats the claim. *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 110 (2011). Under section 2-619(a)(5) of the Code, dismissal of a claim is proper when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2016). Our review of an order dismissing an action pursuant to section 2-619 is *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). "Where a dismissal is proper as a matter of law, the circuit court may be affirmed on any basis supported by the record." *Taylor v. Frey*, 406 Ill. App. 3d 1112, 1115 (2011).

9

¶ 32    In his motion to dismiss, which was granted by the trial court, John argued, *inter alia*, that David's petition to establish the existence of a father-child relationship and for genetic testing was barred by section 609(b) of the Illinois Parentage Act of 2015. Section 609(b) of the Illinois Parentage Act of 2015 provides:

"If a child has an acknowledged parent or an adjudicated parent, an individual, other than the child, who is neither a signatory to the acknowledgment nor a party to the adjudication and who seeks an adjudication of parentage of the child must commence a proceeding not later than 2 years after the effective date of the acknowledgement or adjudication." 750 ILCS 46/609(b) (West 2016).

¶ 33    An " '[a]cknowledged father' means a man who has established a father-child relationship under Article 3." *Id.* § 103(a). An " '[a]djudicated father' means a man who has been adjudicated by a court of competent jurisdiction, or as authorized under Article X of the Illinois Public Aid Code, to be the father of a child." *Id*. § 103(b).

¶ 34    Pursuant to Article 3 of the Illinois Parentage Act of 2015, "a parent-child relationship may be established voluntarily by the signing and witnessing of a voluntary acknowledgment in accordance with Section 12 of the Vital Records Act and Section 10-17.7 of the Illinois Public Aid Code." *Id.* § 301. A voluntary acknowledgment takes effect upon the filing of the document with the Department of Healthcare and Family Services, as provided by law. *Id*. § 304(c). "[A] valid voluntary acknowledgment filed with the Department of Healthcare and Family Services, as provided by law, is equivalent to an adjudication of the parentage of a child and confers upon the acknowledged father all of the rights and duties of a parent." *Id*. § 305(a). A valid voluntary acknowledgment of parentage "has the full force and effect of a judgment entered under the Act

10

[Illinois Parentage Act of 2015] and serves as the basis for seeking a child support order without any further proceedings to establish parentage." *Id.* § 305(b).

¶ 35    Here, David was barred from seeking an adjudication of parentage of E.Z. later than two years after the effective date of John's voluntary acknowledgment of paternity. See *id.* § 609(b). It appears that John's voluntary acknowledgment of paternity (VAP) became effective in June 2014, where the record indicates that Rebecca and John executed the VAP in June 2014 and the birth certificate naming John as E.Z.'s father was amended on June 26, 2014. David did not file his petition to establish parentage of E.Z. until beyond two years after the VAP was effective. Therefore, the trial court did not err in granting John's motion to dismiss David's parentage petition as being barred by section 609(b) of the Illinois Parentage Act of 2015. See 735 ILCS 5/2-619 (West 2016).

¶ 36    On appeal, David contends that the two-year time limitation should not be strictly applied in this case because Rebecca and John made fraudulent claims to the trial court "at the hearing where [John] was granted parentage." However, David has forfeited these arguments of fraud and misrepresentation by Rebecca and John on appeal because he failed to raise the issue in the trial court. See *People v. Enoch*, 122 Ill. 2d 176, 185-86 (1988) (the failure to raise an issue in the trial court results in forfeiture of that issue on appeal); *Huang v. Brenson*, 2014 IL App (1st) 123231 (noting that the failure to raise an issue in the trial court generally results in forfeiture of the issue on appeal).

¶ 37    Additionally, based upon the pleadings and the record in this case, we find no support in the Illinois Parentage Act of 2015 for David's contention that the two-year limitation should not be applied in this case where there is no indication in the record that David was a presumed, acknowledged, or adjudicated parent of E.Z. See 750 ILCS 46/302(b) (West 2016) ("an

11

acknowledgment is void if it *** falsely denies the existence of a presumed, acknowledged, or adjudicated parent of the child"); 750 ILCS 46/103(p) (West 2016) (a "[p]resumed parent" is an individual who, by operation of law under Section 204, is recognized as the parent of a child until that status is rebutted or confirmed in a judicial or administrative proceeding"); 750 ILCS 46/204(a) (West 2016) (a person is "presumed to be the parent of a child" if (a) the person and the mother of the child were married, in a civil union, or in a substantially similar legal relationship) and the child was born during the marriage, civil union, or substantially similar legal relationship; (b) the person and the mother of the child were in a marriage, civil union, or substantially similar legal relationship and the child was born to the mother within 300 days after the marriage, civil union, or substantially similar legal relationship was terminated; (c) prior to the birth of the child, the person and the mother of the child entered into a marriage, civil union, or substantially similar legal relationship in apparent compliance with law and the child was born during that relationship or within 300 days after its termination; or (d) after the child's birth, the person and the child's mother entered into a marriage, civil union, or substantially similar legal relationship and the person is named, with the person's written consent, as the child's parent on the child's birth certificate). In parentage cases, the trial court has no inherent authority to deviate from plain language of the Parentage Act and exceed its parameters. *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1012 (2008). Thus, the trial court had no authority to deviate from the two-year limitation set forth in section 609(b) of the Parentage Act in this case.

¶ 38        Therefore, David's petition to establish parentage of E.Z. was time-barred because it was not commenced within the time limited by law. See 750 ILCS 46/609(b) (West 2016). Consequently, we need not address David's contentions related to his counsel's performance because he could not have been prejudiced by his counsel's performance. We also do not address

12

any remaining arguments due to David failing to develop these arguments in his brief on appeal. *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37 (the appellate court is not a repository into which an appellant may foist the burden of argument and research); Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (arguments "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record on appeal where evidence may be found"). Accordingly, we affirm the trial court's order granting John's motion to dismiss David's petition pursuant to section 2-619 of the Code.

¶ 39                                                CONCLUSION

¶ 40            For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 41            Affirmed.

13