2022 IL App (1st) 211636-U

SECOND DIVISION
August 9, 2022

No. 1-21-1636

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| TRACY STINGLEY, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MECHELE BURTLEY, | ) | |
| | ) | Nos. 18 D 679242 |
| Respondent-Appellant, | ) | 18 D 2092 (cons.) |
| | ) | |
| and | ) | |
| | ) | |
| MONTE RUFUS, | ) | |
| | ) | Honorable Abbey Fishman |
| Third-Party Respondent-Appellant. | ) | Romanek, Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse the judgment of the circuit court denying appellant's motions to vacate a finding of paternity. Where the voluntary acknowledgment of paternity of a child has been executed pursuant to statute and had not been vacated or rescinded, the court did not have a justiciable issue before it when it made a finding of a paternity in a case filed by a third party seven years after the acknowledgment; the issue of paternity had already been resolved.

¶ 2     Mechele Burtley, appellant, is the mother of M.R., a female child born on July 26, 2011. On July 26, 2011, the same day of M.R.'s birth, Michele and her friend, Monte Rufus, appellant, executed a voluntary acknowledgement of paternity in compliance with Illinois law to establish Monte as the legal father of M.R. 750 ILCS 46/201(b)(2) (West 2020). Seven years later, appellee Tracy Stingley filed a complaint to establish a parent-child relationship with M.R., alleging DNA tests showed he was actually the biological father of M.R. In November 2018, the trial court entered an order finding Tracy is the father of M.R., based primarily on DNA results showing that he was the biological father. Mechele and Monte moved the court to vacate the finding of paternity, arguing the court lacked subject matter jurisdiction to hear Tracy's petition. The trial court denied the motions to vacate the finding of paternity and they both appeal. For the following reasons, we reverse the circuit court's order denying the motion to vacate the order finding Tracy is the father of M.R. and remand with instructions.

¶ 3                              BACKGROUND

¶ 4     Mechele Burtley gave birth to a daughter, M.R., on July 26, 2011. Monte Rufus executed a voluntary acknowledgement of paternity (VAP) as M.R.'s father on the same day she was born, and he is named as M.R.'s father on her birth certificate. Mechele and Monte were in a relationship together since at least 2011. In 2014, they got married. Mechele and Monte subsequently had two other children together.

¶ 5     In January 2016, Mechele reportedly informed Monte that he may not be M.R.'s biological father. Monte contacted petitioner Tracy Stingley in January 2016 and informed Tracy that he may be M.R.'s biological father. Monte and Tracy subsequently took over-the-counter DNA tests which revealed that Tracy was M.R.'s biological father and Monte was not. In 2017, M.R. began having visits with Tracy, his wife, and his five other children.

¶ 6    Mechele filed a petition to dissolve her marriage to Monte in March 2018. Her petition for dissolution of marriage states that she and Monte had three children together, specifically naming M.R. as one of the children "born to or adopted by the parties." The circuit court entered a default judgment for dissolution of the marriage in May 2018 where the court made a finding that three children, including M.R., were born to or adopted by the parties. The court subsequently entered various orders pertaining to visitation and parental responsibilities in contemplation of Monte as M.R.'s legal father.

¶ 7    In October 2018, Tracy filed a complaint to establish a parent-child relationship with M.R. Monte was not made a party in the complaint filed by Tracy. At the first court hearing, November 5, 2018, the parties appeared *pro se* and the trial court, unaware of the voluntary acknowledgement and dissolution judgment, entered a finding that Tracy was the father of M.R. based on the over-the-counter DNA results and the testimony of the parties. The court ordered the parties to complete parenting plans, and it awarded Tracy visitation of M.R. every other weekend.

¶ 8    Mechele subsequently filed a formal appearance in the paternity case. Tracy and Mechele filed various motions and petitions in the paternity case regarding parental responsibilities, child support, and visitation, among other things. In July 2019, the judge presiding over the paternity case entered an order expressing the possibility that his judgment of paternity might be void or voidable. The judge noted that the court had become aware after making the paternity finding that Monte had signed a voluntary acknowledgment of paternity for M.R. and that Monte was likewise named M.R.'s legal father in the judgment of dissolution of Mechele and Monte's marriage. The judge stated that Monte might be a necessary party to the paternity action and that Tracy "is clearly the biological father but not necessarily the legal father at this point."

¶ 9    On August 22, 2019, Mechele filed a motion to join Monte as a party in the paternity case and also filed a motion to vacate and declare void the order finding Tracy to be M.R.'s legal father. Mechele noted that Monte had signed a VAP and that conflicting rulings had been issued by separate judges wherein a different man was adjudicated to be M.R.'s legal father in separate proceedings. After appearing in the case, Monte also filed a motion to vacate the finding of paternity on the grounds that the order was void. Over the course of the next several months, from July 2019 to May 2020, the parties exchanged motions about parental responsibilities, parenting time, and their grievances with one another. The proceedings were also briefly delayed due to the impact of the COVID-19 pandemic. In May 2020, the judge presiding over the paternity case entered an order transferring the paternity case so that it could be consolidated into the case dissolving Mechele's and Monte's marriage. Tracy meanwhile filed a motion to void Monte's voluntary acknowledgment of paternity.

¶ 10    With the cases consolidated, the court ordered the parties to undergo DNA testing. The court-ordered DNA testing confirmed Tracy to be M.R.'s biological father. The court then turned to the issue of Mechele and Monte's motions to vacate the November 5, 2018 finding of paternity issued in Tracy's favor. The court held a hearing and heard arguments from the parties regarding the motions to vacate the finding of paternity. Following the hearing, the court denied the motions to vacate the finding of paternity adjudicating Tracy to be M.R.'s legal parent. Mechele and Monte appeal arguing that the trial court erred when it adjudicated Tracy as M.R.'s legal father and by failing to vacate the order on their motions.

¶ 11                                      ANALYSIS

¶ 12    Mechele and Monte argue that the trial court erred when it heard Tracy's petition and named him as M.R.'s legal father because the court lacked subject matter jurisdiction to hear the

case. They argue Monte was M.R.'s acknowledged and legal father, and as a result of the acknowledgment, under Illinois statues and case law there was no justiciable issue before the court concerning the parentage of M.R. when the court entered its paternity order. Therefore, the court lacked subject matter jurisdiction to enter its order. They argue that the trial court erred when, after learning that Monte had executed a voluntary acknowledgment of paternity and was named as M.R.'s father in the divorce decree, it refused to vacate its previously entered order finding Tracy was M.R.'s father.

¶ 13    This court has jurisdiction to hear the appeal of the court's order denying the motions to vacate the November 5, 2018 order as void under Supreme Court Rule 304(b)(3) as an appeal from the denial of relief of a section 2-1401 petition. Although the motions to vacate a void order were not captioned as 2-1401 petitions or refer to section 2-1401, a petition seeking relief from a void judgment is a section 2-1401 petition, regardless of whether or not it bears that title. *In re Custody of Ayala*, 344 Ill. App. 3d 574, 581-82 (2003), citing *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104-05 (2002). Therefore, the motions to vacate a void judgment are treated as section 2-1401 petitions, and this court has jurisdiction to hear the denial of relief under Supreme Court Rule 304(b)(3).

¶ 14    This case was decided without an evidentiary hearing on the purely legal issue of whether the court had subject matter jurisdiction over Tracy's complaint, therefore we will review the decision *de novo*. *Citimortgage, Inc. v. Sharlow*, 2014 IL App (3d) 130107, ¶ 14 ("The appellate court applies a *de novo* standard of review in cases in which the trial court either dismissed a section 2–1401 petition or ruled on the petition based on the pleadings alone, without an evidentiary hearing." (citing *People v. Vincent*, 226 Ill. 2d 1, 18 (2007))).

¶ 15    In their reply brief, Mechele and Monte argue that Tracy's response brief should be stricken for his failure to comply with the Illinois Supreme Court Rules governing appellate briefs. Tracy, appearing *pro se* in this appeal, made an earnest effort to prepare his brief. However, the brief fails to meet many of the requirements for a valid brief on appeal. It lacks the required certificate of compliance (Ill. S. Ct. R. 341(c) (West 2020) (eff. Oct. 1, 2020)); citations to the record for factual statements (Ill. S. Ct. R. 341(h)(6)); citations and argument concerning relevant authority (Ill. S. Ct. R. 341(h)(7)); and it fails to meet other formatting and technical requirements (see, *e.g.*, Ill. S. Ct. R. 341(a); Ill. S. Ct. R. 341(h)).

¶ 16    Tracy's *pro se* status does not relieve him of the burden of complying with the Rules governing appellate procedure. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). A brief on appeal that fails to comply with the Supreme Court Rules is subject to being stricken. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. Bearing in mind that Tracy's brief could be stricken for its failure to comply with the Rules, we nevertheless move to the merits of the appeal because the parties' submissions still allow us to provide a meaningful review of the issues in this appeal. *Twardowski*, 321 Ill. App. 3d at 511.

¶ 17    Under the Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq*. (West 2020)), a parent-child relationship between a man and a child may be established by an effective voluntary acknowledgment of paternity. 750 ILCS 46/201(b)(2) (West 2020). A valid voluntary acknowledgment "is equivalent to an adjudication of the parentage of a child and confers upon the acknowledged father all of the right and duties of a parent." 750 ILCS 46/305(a) (West 2020). In this case, no issue is raised as to the validity of the voluntary acknowledgment executed by Monte or the fact that it was a conclusive and binding adjudication of Monte's

parentage rights for M.R. Monte has been M.R.'s legal father since the day of her birth because he executed the voluntary acknowledgment of paternity that was never challenged or rescinded.

¶ 18     Section 609 of the Parentage Act provides a procedure by which a party, like Tracy, who claims to be the father of a child may file a complaint to establish a parent-child relationship where there is a previously entered voluntary acknowledgement of paternity. Section 609(b) provides that when a child has an acknowledged father, a party who is not a signatory on the acknowledgment *must* file a petition to establish a parent-child relationship within two years from the date of the acknowledgement:

> "Sec. 609. Limitation; child having acknowledged or adjudicated parent.
>
> a) If a child has an acknowledged parent, a signatory to the acknowledgment described in Section 301 of this Act or related denial may commence a proceeding seeking to challenge the acknowledgment or denial or challenge the paternity of the child only within the time allowed under Section 309 of this Act.
>
> b) If a child has an acknowledged parent or an adjudicated parent, an individual, other than the child, who is neither a signatory to the acknowledgment nor a party to the adjudication and who seeks an adjudication of parentage of the child must commence a proceeding not later than 2 years after the effective date of the acknowledgment or adjudication." 750 ILCS 46/609 (West 2020)

¶ 19     In this case, the acknowledgment of paternity was signed on July 26, 2011. Tracy did not file his complaint to establish paternity until October 1, 2018—well beyond the two-year limitation period permitted under law for such a challenge. The appellants further alleged Tracy, when he filed his initial complaint, deceived the court by denying there was a voluntary

acknowledgement of paternity for M.R. and he affirmatively denied there was a judgment entered in the dissolution of marriage case which made a finding Monte was the father of M.R.

¶ 20    Michelle and Monte argue that because Tracy's complaint was filed beyond the two-year limitation period following the signing of the acknowledgment, Tracy's complaint was outside of the parameter of the Paternity Act and there was no justiciable issue for the court to determine about the paternity of M.R. Therefore the court had no jurisdiction to hear the paternity issues raised by Tracy or enter the November 5, 2018 order.

¶ 21    This court has held that the circuit court lacks authority to disregard a valid acknowledgment of paternity and revisit the father-child relationship outside of the parameters expressed in the Parentage Act. We have previously held when a child has a legal parent, the court lacks subject matter jurisdiction to revisit the issue of paternity because there is no longer a justiciable issue. See *In re Parentage of G.E.M.*, 382 Ill. App. 3d 1102, 1121 (2008) (the court lacks subject matter jurisdiction to revisit or re-determine the existence of a father and child relationship for a child who already has a legal father); *In re Custody of C.C.*, 2013 IL App (3d) 120342, ¶ 63 (once a father is adjudicated to be the legal parent of a child, there is no longer a justiciable issue concerning parental rights).

¶ 22    In *G.E.M.*, the mother had sexual relations with three men during the possible period of conception. After the birth of the child, one of the men, Richard, signed a VAP. The mother subsequently filed a petition to establish a parent-child relationship against Richard in DuPage County. The trial court entered an agreed order declaring Richard to be the father and awarded the mother child support. Two years later, the mother filed a petition to terminate child support, alleging that Richard was not the biological father. Subsequently, the trial court entered an order declaring that Richard was not the child's father and vacated all orders of parentage against him.

A year later, the mother filed a parentage petition in Will County against another man, Louis. Louis filed a motion to dismiss, alleging that, since the mother and Richard had signed an acknowledgment of paternity, the issue had been resolved and was binding. The trial court denied the motion to dismiss and entered a judgment of paternity against Louis, who appealed the order.

¶ 23    The appellate court reversed, holding the DuPage County order vacating Richard's parentage of G.E.M. was void for lack of subject matter jurisdiction. The appellate court ruled the DuPage circuit court had no subject matter jurisdiction to revisit or re-determine the existence of a father and child relationship for a child who already had a legal father. Richard, by signing the VAP, was G.E.M.'s legal father. Therefore, there was no justiciable issue concerning the paternity of G.E.M. for the court to determine. The court also reversed the Will County court, holding the court erred in denying the motion to dismiss.

¶ 24    When Tracy filed his complaint, Monte had signed a VAP seven years earlier and was found to be the father of M.R. in a subsequent dissolution of marriage judgment, similar to the circumstances in *G.E.M.* The VAP was never rescinded or vacated. Like in *G.E.M.*, M.R. had a legal father when Tracy filed his complaint. And like *G.E.M.* another court had entered an order finding Monte was the father of M.R. There was no justiciable issue for the court to consider concerning the paternity of M.R. Therefore, the court lacked subject matter jurisdiction to consider the issue of M.R.'s paternity and the November 5, 2018 paternity order is void.

¶ 25    Tracy argues that he filed his parentage complaint "within the allocated time according to the rule and [his] *actual knowledge* of the matter." (Emphasis added). He argues that because he did not receive the results of the over-the-counter DNA test until 2016, he did not have actual knowledge that he was the father of M.R. until 2016. Therefore, his petition was timely filed

within two years of his knowledge that he was the father of M.R. The trial court agreed the petition was timely filed holding it was filed within two years of his actual knowledge.

¶ 26    Tracy's argument that he may file a paternity complaint within two years of actual knowledge is not found in any of the applicable statutes. Tracy apparently conflates the remedies available to the signers of a VAP to rescind the VAP on grounds of disability, mistake, or fraud under section 309 (750 ILCS 46/309) with the remedies available to third parties like Tracy who who are not signatories on a VAP but seek to establish a parental relationship with a child for whom a VAP was signed. 750 ILCS 46/609(b).

¶ 27    Under section 307, a signer of a VAP has the right to rescind a VAP within 60 days of its signing. However, after 60 days the procedure for rescinding the acknowledgment is found in sections 308 and 309. 750 ILCS 46/307-09. Section 308 provides that after the 60-day rescission period has expired, a signatory to a VAP may only challenge it as provided in Section 309:

> "Sec. 308. Challenge after expiration of period for rescission. After the period for rescission under Section 307 of this Act has expired, a signatory of a voluntary acknowledgment or denial may commence a proceeding to challenge the voluntary acknowledgment or denial only as provided in Section 309 of this Act."
> 750 ILCS 46/308 (West 2020)

Section 309 of the Act, provides:

> "Sec. 309 (a) A voluntary acknowledgment and any related denial may be challenged only on the basis of fraud, duress, or material mistake of fact by filing a verified petition under this Section within 2 years after the effective date of the voluntary acknowledgment or denial, as provided in Section 304 of this Act. Time during which the person challenging the voluntary acknowledgment or denial is

under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years.

(b) The verified complaint, which shall be designated a petition, shall be filed in the county where a proceeding relating to the child was brought, such as a support proceeding or, if none exists, in the county where the child resides. Every signatory to the voluntary acknowledgment and any related denial must be made a party to a proceeding to challenge the voluntary acknowledgment or denial. The party challenging the voluntary acknowledgment or denial shall have the burden of proof. The burden of proof to challenge a voluntary acknowledgment is clear and convincing evidence." 750 ILCS 46/309 (West 2020).

Section 309 provides the procedure for signatories of a VAP to rescind or challenge a VAP. Section 309 is not applicable to a person like Tracy who is not a signatory on the VAP.

¶ 28    Instead, section 609 is the statute permitting a non-signatory of a VAP, like Tracy, to challenge a VAP, not section 309. Where a VAP has been signed for a child section 609 provides a two-year limitations period, with no extensions provided for mistake or fraud for a person who is not a signatory on the acknowledgment to petition to establish a parent-child relationship. 750 ILCS 46/609(b)

¶ 29    When a child has an acknowledged or adjudicated parent, as in this case, the person seeking to assert parentage "*must* commence a proceeding not later than 2 years *after the effective date of the acknowledgment* or adjudication (emphasis added)." 750 ILCS 46/609(b) (West 2020); *John V. v. Rebecca Z.*, 2020 IL App (3d) 170802-U, ¶¶ 37-38. Tracy's parentage action was commenced more than seven years after the effective date of the acknowledgment of

paternity. Therefore M.R. had a legal father when Tracy filed his complaint and there was nothing for the court to decide. *G.E.M.*, 382 Ill. App. 3d at 1121.

¶ 30    Even if we assume *arguendo*, the legal disability, mistake, and fraud provisions in 309 applied to a non-signer of a VAP to extend the two-year time to file his petition to establish a parental relationship with a child, Tracy still could not prevail. Tracy did not plead or argue he was under legal disability, or a victim of fraud, duress, or material mistake of fact. Although the circuit court never conducted an evidentiary hearing, there is evidence Tracy was told he was possibly M.R.'s father more than two years before he filed his October 2018 complaint. Tracy filed pleadings which constitute judicial admissions that Monte told Tracy before the summer of 2016 that Tracy may be M.R.'s biological father. On January 6, 2020, Tracy filed a petition to vacate the VAP.  Tracy made the following allegations:

> "7. In 2016 MECHELE confessed to MONTE RUFUS that the minor child was
> not his.
>
> 8. The Respondent's then husband, MONTE called the Petitioner and informed
> him he may be the father of the minor child.
>
> 9. MONTE then took a DNA test to confirm parentage of minor child and the test
> came back negative.
>
> 10. MECHELE and MONTE then relocated to Texas for the summer of 2016.
>
> 11. When they returned in the fall of 2016, MONTE and TRACY agreed to meet
> for TRACY to take a DNA test, which came back positive."

¶ 31    Tracy therefore admits in his pleadings that Monte told Tracy before the summer of 2016 that he may be the biological father of M.R. More than two years elapsed between the time Tracy learned he was possibly the father of M.R. and the time he filed his complaint. Therefore, Tracy

can no longer establish a relationship with M.R. because the complaint was filed more than two years after the VAP was signed and also more than two years after he learned he may be the biological father of M.R. 750 ILCS 46/609(b)

¶ 32    The allegations in his pleadings constitute judicial admissions binding on Tracy. *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶ 64 ("A judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge."); *US Bank, National Association v. Avdic*, 2014 IL App (1st) 121759, ¶ 38. Tracy certified his complaint under section 1-109 of the Code of Civil Procedure and he has consistently reiterated those factual assertions numerous times in the trial court and before this court. His admissions establish that M.R.'s paternity was discussed with Tracy before the summer of 2016. This evidence negates any notion that Tracy was subject to fraudulent concealment during the two years between the summer of 2016 and the summer of 2018. Therefore, his complaint filed in October of 2018 was untimely, even if the limitation extending provisions of section 309 applied to him.

¶ 33    Finally, from our review of the record we note that when the court made the November 5, 2018 finding of paternity in Tracy's favor, Monte was not named a party to the proceedings despite being M.R.'s legal father. To the circuit court's credit, it had no knowledge that M.R. already had a legal father at the time it issued a finding of paternity. And when a hearing officer discovered the existence of Monte's parental rights, the court acknowledged that Monte may be a necessary party in the parentage case and that its finding of paternity in favor of Tracy might be void. However, the case was transferred to a new judge and instead of vacating the order finding Tracy to be M.R.'s legal father, the trial court denied Mechele's and Monte's motions to vacate the order and allowed the finding of paternity in Tracy's favor to stand.

¶ 34    We find Monte was a necessary party to the complaint filed by Tracy in October 2018 that resulted in the order of paternity at issue because Monte's rights as M.R.'s legal father were adversely affected by the order. A necessary party is one whose presence is required for any one of three reasons: (1) to protect an interest that the absent person has in the subject matter of the controversy that would be materially affected by a judgment entered in his absence; (2) to reach a decision that will protect the interests of those parties before the court; and (3) to enable the court to make a complete determination of the controversy. *In re Estate of Ostern*, 2014 IL App (2d) 131236, ¶ 18. "The requirement of joinder of necessary (and indispensable) parties is absolute and inflexible." *Lain v. John Hancock Mutual Life Insurance Co.*, 79 Ill. App. 3d 264, 270 (1979). Both the trial and appellate court have a duty to enforce this principle of law *sua sponte* when it is brought to their attention. *National Bank v. S.N.H., Inc.*, 32 Ill. App. 3d 110, 121 (1975). An order entered without jurisdiction over a necessary party is null and void. *People ex rel. Meyer v. Kerner*, 35 Ill. 2d 33, 38 (1966); *In re Adoption of Ledbetter*, 125 Ill. App. 3d 306, 308 (1984). Monte clearly had an interest in the complaint filed by Tracy. Because the November 5, 2018 paternity order was entered without Monte, M.R.'s legal father, the order was entered without a necessary party and is void.

¶ 35    We find the circuit court erred when it failed to vacate the November 5, 2018 finding of paternity. Therefore, we reverse the order denying the motion to vacate the November 5, 2018 finding of paternity. We further instruct the circuit court to vacate any subsequent orders granting parental rights or any obligations flowing from that order.

¶ 36    We also note that in January 2020 Tracy filed a motion to vacate the VAP and a motion to vacate the judgment of dissolution of the marriage between Monte and Mechele. The circuit court has not ruled on these motions. It is clear Tracy's motion to vacate the VAP is time barred

14

and Tracy has no standing to contest the judgment of dissolution. This case has been pending for 4 years. In the interests of judicial economy, which are heightened in this accelerated case concerning the parentage of a child, and in the exercise of our discretion under Illinois Supreme Court Rule 366(a)(5) (West 2020) (eff. Feb. 1, 1994), upon remand we further instruct the circuit court to dismiss with prejudice Tracy's parentage action (2018 D 679242), Tracy's January 2020 petition to vacate the VAP, and Tracy's motion to vacate the judgment of dissolution of marriage.

¶ 37                                         CONCLUSION

¶ 38    Based on the foregoing, we reverse and remand with instructions.

¶ 39    Reversed, and remanded with instructions.